Commonwealth of Pennsylvania by Robert N. Hendershot, Acting Secretary of Education and Robert. P Kane, Attorney General, Petitioners *v.* Mifflin County School Board, Harold L. Dunmore, President, Mifflin County School Board, Respondents.

Argued April 13, 1977, before Judge KRAMER.

*Howard M. Levinson, Paul Schilling,* and *J. Justin Blewitt,* for petitioners.

*John R. Miller, Jr.,* and *Barron & Zimmerman,* for respondents.

*Michael I. Levin,* for amicus curiae.

MEMORANDUM OPINION BY JUDGE KRAMER, April 22, 1977:

This is a case brought within the original jurisdiction of this Court, seeking, *inter alia,* a peremptory judgment. The issue before the undersigned trial judge is whether the Petitioners seeking the peremptory judgment have met their burden of proving that they are entitled to the relief they seek.

After a review of the record, and after a public hearing at which all parties present were given the

opportunity to present whatever they desired, the Court concludes that the Petitioners have not proven their legal entitlement to a peremptory judgment.

We therefore

ORDER

AND Now, this 22nd day of April, 1977, it is ordered that the prayer of the petition is denied. The Prothonotary is ordered to list this case for trial on the merits at the earliest possible date. Because of the urgency expressed by the parties, this order is being filed prior to an opinion explaining the reasons for this result. An opinion will follow as soon as the Court's schedule permits.

———

OPINION BY JUDGE KRAMER, May 16, 1977:

This is an action in mandamus in the original jurisdiction of this Court by which the Commonwealth of Pennsylvania (Commonwealth) seeks to compel the Mifflin County School Board (Board) to amend its calendar for the 1976-77 school year to make up 19 days lost due to a teachers' strike. On April 22, 1977, this Court issued an order denying the Commonwealth's motion for a peremptory judgment. The purpose of this opinion is to explain and support that order.

On May 18, 1976, the Board adopted a school calendar for the 1976-77 school year under which instruction was to commence on September 3, 1976, to end on June 3, 1977, and which provided for exactly 180 days of instruction. During November and December of 1976, a professional employees' strike resulted in the loss of 19 days of instruction. An additional three days were lost due to the natural gas shortage which occurred in early 1977. Presently, there are 19 days, all subsequent to June 3, which remain available for make-up before the statutorily

mandated end of the school year on June 30, 1977.[1]
If all 19 days are used, the Mifflin school year will
consist of 177 days of instruction.

The Commonwealth contends that the Board has
a mandatory duty to provide as close to 180 days of
instruction as is possible before the statutory end of
the school year under Section 1501 of the Public
School Code of 1949, Act of March 10, 1949, P.L. 30,
*as amended,* 24 P.S. §15-1501. Section 1501 provides
in pertinent part:

> All public kindergartens, elementary and
> secondary schools shall be kept open each school
> year for at least one hundred eighty (180) days
> of instruction for pupils.

The Commonwealth further asserts that all doubts as
to its right to relief in mandamus in cases seeking
compliance with the "180 day rule" were removed by
the decision in *Pittenger v. Union Area School Board,*
24 Pa. Commonwealth Ct. 442, 356 A.2d 866 (1976).
Thus, it argues that peremptory judgment is proper
and should be granted.

The Board, on the other hand, asserts that it is
under the duty to amend its schedule to make up only
as many of the lost days as sound educational prac-
tice would indicate. It relies primarily on the decision
in *Root v. Northern Cambria School District,* 10 Pa.
Commonwealth Ct. 174, 309 A.2d 175 (1973). In its
pleadings the Board makes numerous allegations
which run to the issue of what is sound educational
practice under the circumstances of this case. For
example, it is alleged that extending the school year
beyond the originally scheduled ending date of June
3 would: (1) interfere with or frustrate job plans and
further educational plans of many students; (2) upset
family vacation plans; (3) interfere with the perform-

---

[1] Section 102(4) of the Public School Code of 1949, Act of
March 10, 1949, P.L. 30, *as amended,* 24 P.S. §1-102(4).

ance of farming duties of many students; (4) conflict with Bible schooling held in the month of June; (5) cause the loss of such summer programs as those in music and driver education; (6) create a substantial risk of student unrest and disciplinary problems; (7) be of little or no incremental educational value; and (8) result in sparse attendance.

If the Commonwealth's position that *Union Area, supra,* makes these allegations irrelevant is correct, the peremptory judgment would be proper. But if the principles announced in *Root, supra,* are applicable, then these allegations raise material issues of fact which, of course, render peremptory judgment improper.[2]

In order to resolve the dilemma, it is necessary to review briefly *Root, Union Area,* and a third case, *Commonwealth v. Leechburg Area School District,* 19 Pa. Commonwealth Ct. 140, 339 A.2d 149 (1975). All three of these cases were heard by the Commonwealth Court sitting en banc.

*Root* involved an action in equity to compel a school board to reschedule 30 days lost due to a teachers' strike. The lower court dismissed. In a 5-2 decision, the majority affirmed, holding that Section 1501 of the Code does not require a school board to reschedule lost days if this is impossible or impractical; the board must amend its schedule to make up as many

---

[2] Pa. R.C.P. No. 1098, 42 Pa. C.S.A., which authorizes "Peremptory Judgment" in mandamus cases was, prior to November 19, 1975, entitled "Summary Judgment". The rule was retitled to avoid confusion with the general summary judgment procedure authorized by Pa. R.C.P. No. 1035. However, the granting or denial of "Peremptory Judgment" continues to be guided by the principles governing the disposition of motions for summary judgment. One such principle is that such a motion should not be granted except in the clearest of cases where there is not the least doubt as to the absence of a triable issue of material fact. *Prince v. Pavoni,* 225 Pa. Superior Ct. 286, 302 A.2d 452 (1973).

days as sound educational practice would indicate. 10 Pa. Commonwealth Ct. at 180, 309 A.2d at 178. The lower court had not abused its discretion in dismissing the case.

*Leechburg* involved an action in mandamus in the Commonwealth Court's original jurisdiction by which the Commonwealth sought to compel a school board to make up four days lost due to a teachers' strike by adding them onto the end of the regularly scheduled school year. The Commonwealth moved for summary judgment. Following *Root*, the Court, in another 5-2 decision, denied the motion because it could not determine from the pleadings whether the rescheduling of the four days at the end of the originally scheduled school year would be with or without adverse ramifications from the educational viewpoint.

Finally, *Union Area* was another mandamus action in the Court's original jurisdiction which sought to compel a school board to make up five days lost due to a teachers' strike. Evidence adduced at the hearing showed that after the strike ended on September 10, 1975, there were sufficient available holidays so that all five days could be rescheduled without extending the school year beyond its slated June 10 ending date. The school superintendent had so recommended, but the school board rejected his proposal. The board's only defense to the plaintiff's action was the argument that rescheduling the lost days would result in unlawfully compensating teachers for days when they were engaged in a strike.[3]

---

[3] This contention, based upon Section 1006 of the Public Employe Relations Act, Act of June 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.1006, was also raised in *Root*. The Court in *Union Area* at 447, 356 A.2d at 869 and in *Root* at 183 n. 5, 309 A.2d at 179 n. 5, held this argument to be wholly without merit. We agree. If the days are rescheduled, the teachers will be compensated for working on those days, not for the strike days.

By a 6-0 decision the Court granted the requested relief (KRAMER, J., did not participate). However, as to the rationale for this result, the Court divided evenly. Judge MENCER's opinion, joined by President Judge BOWMAN and Judge CRUMLISH, concluded that mandamus was the proper action under the facts of the case and that the plaintiffs had established their right to the relief sought. Moreover, the opinion stated, "[W]e are of the view that *Root* can be fairly distinguished from the instant case. However . . . if there is any inherent conflict between our holding in *Root* and today's decision, our holding here prevails and any inconsistent portions of *Root* are overruled." 24 Pa. Commonwealth Ct. at 448, 356 A.2d at 869.

However, Judge WILKINSON's concurring opinion, joined by Judges ROGERS and BLATT, stated the following:

I concur in the result reached by the majority, but in doing so, I do not denigrate or minimize our decision in Root v. North Cambria School District, 10 Pa. Commonwealth Ct. 174, 309 A.2d 175 (1973). I continue to be of the opinion that it is within the discretion of the school board as to whether the school calendar should be altered to make up the days missed. However, in this instance, the Board has abused its discretion. In my opinion, under the facts presented here, the Board is under a clear duty to modify the previously established calendar. In this regard, it is not only unnecessary to distinguish Root, much less overrule it, but, indeed, this decision is in entire accord. (Footnote omitted.)

24 Pa. Commonwealth Ct. at 449, 356 A.2d at 870.

*If* the principle set forth in *Root* and *Leechburg* remains viable after *Union Area,* the Court is of the opinion that the present case is controlled by the deci-

sion and opinion in *Leechburg* and that the Commonwealth's motion for peremptory judgment must be denied. As in *Leechburg,* and unlike *Union Area,* the Board could not make up the lost days within the timeframe of the originally scheduled school year. As in *Root* and *Leechburg,* and unlike *Union Area,* the Board has by numerous allegations raised the possibility that rescheduling the lost days would be dysfunctional from the educational viewpoint. In sum, as between *Union Area* on one hand and *Root* and *Leechburg* on the other, the Court concludes that the allegations in the present case bring it within the principles of the latter.

The key question remaining for resolution is whether and to what extent *Union Area* has overruled *Root* and, by implication *Leechburg.* The posture of *Union Area* forces the Court to conclude that *Root* and *Leechburg* remain undisturbed by *Union Area,* despite statements to the contrary in Judge MENCER's opinion. As noted previously, only three of the six participating Judges were of the opinion that *Root* had to be overruled insofar as it was inconsistent with the result reached in *Union Area.* The other three participating Judges were of the view that the result reached was wholly in accord with the principles set forth in the opinion in *Root.* Because less than a majority of the participating judges voted for the opinion announcing the judgment of the Court, the opinion is not decisional on the disputed points. *Commonwealth v. Lasch,* 464 Pa. 259, 263, 346 A.2d 547, 549 (1975) ; *Commonwealth v. Davenport,* 462 Pa. 543, 559 n. 3, 342 A.2d 67, 75 n. 3 (1975) ; *Commonwealth v. Silverman,* 442 Pa. 211, 218 n. 8, 275 A.2d 308, 312 n. 8 (1971). Thus, *Root* and *Leechburg* remain undisturbed as precedent in cases under Section 1501 of the Code. Under those decisions, where the pleadings raise questions of fact as to the educational soundness

of rescheduling lost days, such questions are *material.* Such material questions of fact are raised by the pleadings in the present case and these require the denial of the Commonwealth's motion for peremptory judgment, as was done in the order of this Court on April 22, 1977.

In concluding, we note that the Board has yet to *prove* at trial its allegations relating to the adverse educational impact of rescheduling the 19 lost days. Nothing in this opinion is to be taken as indicating any view of this Court on the merits of the Board's contentions on that subject.