Robert G. Scanlon, Acting Secretary of Education and Edward G. Biester, Jr., Acting Attorney General, Petitioners *v.* Mount Union Area Board of School Directors, Respondents.

410

Argued September 24, 1979, before President Judge Bowman.

*Paul Schilling,* Deputy Attorney General, *Susan Forney,* Deputy Attorney General, *Donna Weldon,* Assistant Attorney General, *Grace D'Alo,* Assistant Attorney General, *Norman J. Watkins,* Deputy Attorney General, and *Edward G. Biester, Jr.,* Attorney General, for petitioners.

*John R. Miller, Jr.,* with him *Miller, Kistler & Campbell, Inc.,* for respondent.

OPINION BY PRESIDENT JUDGE BOWMAN, November 28, 1979:

Characterizing it as a test case and one which implicitly seeks reconsideration by this Court of its prior decisions, the Secretary of Education and the Attorney General, on February 15, 1979, filed a multi-count petition for review in the nature of mandamus, equity and declaratory judgment against respondent, Mount Union Area Board of School Directors.

The petition for review and the reliefs sought in the several counts are predicated upon alternate legal theories (a) that Section 1501 of the Public School Code of 1949 (Code),[1] 24 P.S. §15-1501, mandates at least 180 days of instruction for pupils each school year, or (b) that if discretion rests in a local school board to afford less than 180 days of such instruction, respondent has abused its discretion in not doing so in this case. The school year involved is that of 1978-79.

For reasons hereinafter set forth we dismiss the mandamus and equity counts of the petition for review and one declaratory judgment count but perceive the other declaratory judgment count as proper for disposition.

The factual background undergirding petitioners' initial legal theory is uncontested. During the 1978-79 school term, Mount Union Area School District experienced a strike of its professional employees, during which strike period twenty-two (22) instructional days were lost except with respect to trainable mentally retarded pupils and those pupils who attended a vocational-technical school. Upon termination of the strike, a collective bargaining agreement was entered into. The original school calendar as adopted by respondent provided for pupil instruction to begin September 6, 1978 and to end on June 5, 1979. This calen-

---

[1] Act of March 10, 1949, P.L. 30, *as amended.*

dar provided for 180 days of pupil instruction. After settlement of the strike and agreement with its professional employees, respondent on November 21, 1978, adopted a resolution calling for the revision of the original school calendar with these pertinent features: (1) no days already scheduled for Christmas vacation would be rescheduled as days of instruction; and (2) a revised school calendar would not extend beyond June 8, 1979. The original school calendar provided for pupil instruction to end on June 5, 1979. The following day the Department of Education by one of its officials advised respondent in writing of the department's awareness of the strike and days lost thereby and of the need to afford 180 days of pupil instruction notwithstanding days lost by reason of the strike.

On January 8, 1979, respondent adopted a revised school calendar for the school year, which provided for a maximum 165 days of pupil instruction, the final day thereof being June 8, 1979. Upon receiving notice of the respondent's revised school calendar, the department promptly advised respondent that it was not in compliance with the law which the department considered as mandating 180 days of pupil instruction regardless of the disruption of the original calendar caused by the strike. Respondent declined to further revise its school calendar. Hence this suit.

At the time of hearing on the petition for review on May 22, 1979, it was revealed that one of the pupil instruction days provided for in the revised school calendar had been lost because of inclement weather conditions. Whether this day was to be made up was left unsaid, but, in any event, it was not contested that the maximum number of pupil instruction days to be afforded by respondent for the school year in question would be 165 days, with the last day fixed for June 8, 1979.

After an evidentiary hearing, the parties submitted requested findings of fact and conclusions of law, briefs were submitted and oral argument was heard.[2]

The relief sought in the mandamus count of the petition for review is an order directing respondent to make up the deficiency in pupil instruction days. Similarly, the count in equity seeks a mandatory injunction to that effect. Respondent's 1978-79 school year terminated on June 30, 1979. As these sought-for reliefs cannot now be afforded, we will dismiss these counts of the petition for review as mooted.

Another count of the petition, characterized as Declaratory Judgment No. 2, poses a somewhat unique problem associated with the present impossibility of making any meaningful declaration concerning the rights, status or other legal relations as between these parties. This particular count of the petition is predicated upon petitioners' second legal theory to the effect that if discretion rests in a local school board to afford less than 180 days of pupil instruction, respondent has abused its discretion in this case. A substantial portion of the evidentiary record in this case is directed to this issue.

In *Friestad v. Travelers Indemnity Co.*, 452 Pa. 417, 421-22, 306 A.2d 295, 297-98 (1973), our Supreme Court broadened the reach of declaratory judgment actions. It said:

[2] An unsuccessful attempt was made to promptly bring the case to issue on the several counts asserted in the petition for review to avoid mooting some issues by the passage of time. On the petitioners' motion, the time for filing a responsive pleading was advanced, respondent's preliminary objections were overruled upon consideration of submitted briefs and respondent was directed to answer within five days. The answer produced further pleadings and collateral matters which were disposed of but not until shortly before the close of respondent's school year. Post-evidentiary hearing procedures culminating in oral argument before the hearing Judge postdated the closing of the school year 1978-79.

The legislature adopted the Uniform Declaratory Judgments Act as a 'remedial' statute intended to be 'liberally construed and administered' for the purpose of settling 'uncertainty and insecurity with respect to rights, status, and other legal relations. . . .' Despite this mandate, and notwithstanding the *clear* and *explicit* legislative intent to make declaratory judgments available though 'the threatened controversy is susceptible of relief through a general common law remedy, or an equitable remedy, or an extraordinary legal remedy,' many of our decisions have held that a declaratory judgment proceeding would not lie if there existed another available remedy.

To the extent that these decisions rest upon the view that the Uniform Declaratory Judgments Act provides extraordinary relief which may only be invoked in the absence of another available remedy,—whether statutory or nonstatutory—they are disavowed. (Footnotes omitted, emphasis in original.)[3]

Assuming but not deciding as to this count of the petition that there are rights, status or other legal relations existing between the parties to this proceeding within the scope of a declaratory judgment action, we can only conclude that the remedial nature and purpose of this statute cannot now be fulfilled. If the record before us affords a basis for a legal conclusion that respondent had abused its discretion in not affording 180 days of pupil instruction during the school year 1978-79, there is no meaningful relief or remedy to be afforded. Nor, in our view, would such a conclusion predicated upon findings of fact from an evidenti-

---

[3] The Uniform Declaratory Judgments Act has now been incorporated into the Judicial Code, 42 Pa. C.S. §7531 *et seq.*

ary record of disputed facts and expert opinion testimony be significant as precedent. These factors compel a conclusion that this count should also be dismissed as moot.

In a different context but in speaking to a similar question, we pertinently observed:

Declaratory Judgments are not to be employed for . . . the consideration of moot cases or as a medium for the rendition of advisory opinions.

*Singer v. Sheppard,* 33 Pa. Commonwealth Ct. 276, 283, 381 A.2d 1007, 1010 (1978).

The other declaratory judgment count in the petition for review, as noted above, asserts that Section 1501 of the Code mandates 180 days of pupil instruction in each school year. As petitioners have a duty to enforce the Code and declaratory judgment affords a vehicle for judicial determination of the rights and other legal relations between the parties as to this issue, we deem it appropriate to reach and decide this issue even though the application of traditional concepts of mootness might dictate otherwise. Because of the recurring nature of this issue, which is one of important public interest and one that is otherwise capable of repeatedly avoiding judicial review, we shall apply this exception to the rule of mootness. *Port Authority of Allegheny County v. Division 85, Amalgamated Transit Union,* 34 Pa. Commonwealth Ct. 71, 383 A.2d 954 (1978).

Furthermore, petitioners seek reconsideration by this Court of its prior decisions which have not been unanimous on this issue.

*Root v. Northern Cambria School District,* 10 Pa. Commonwealth Ct. 174, 309 A.2d 175 (1973), is our first decision on this subject. It was before us in our appellate jurisdiction by way of an appeal from a lower court dismissal of a complaint in equity which sought to compel a local school district to reschedule

thirty days of pupil instruction lost due to a teacher strike. It was argued before this Court en banc.[4] With the late Judge KRAMER concurring in the result only and two Judges dissenting, we affirmed the lower court. In doing so, we said:

> The Legislature's direction that schools shall be kept open 180 days of course means that school boards shall schedule and attempt to provide for school sessions of this duration. Boards are not, however, thereby required to do either the impossible or the impractical in circumstances not within their control. There are many reasons why, having scheduled the required number of instructional days, the board may be unable to provide them, one of the most obvious of which is strike action by its employes sanctioned by the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, 43 P.S. §1101.101 et seq. Similarly, the control of school schedules given boards by the Legislature is not without limitations. School districts were created to perform a function of government ordered by the people, not one merely authorized by the Legislature. Article 3, Section 14 of the Pennsylvania Constitution. The decisions of school boards must be based solely on consideration for the people's interest in a thorough and efficient system of education; and courts of equity have the power and duty to require that board action conform to the public interest. Hibbs v. Arensberg, 276 Pa. 24, 119 A. 727 (1923). The public interest is that of conducting a good school system; not that of achieving greater participation of teachers' organizations in school policy, or that of

---

[4] In 1973 the Court en banc consisted of all of the Judges of the Commonwealth Court, then seven in number.

maintaining unfettered control of school affairs by local boards of education, or that of establishing the highest or lowest possible salary schedules, or that of exempting from or imposing upon professional employes noninstructional duties, or, finally, that of nourishing or weakening employe associations. Boards must schedule 180 days and provide this number or, if unavoidable cause prevents, amend the schedule so as to provide as many days as sound educational practice would indicate. In this determination, its professional administrators' opinions should have the greatest weight.

10 Pa. Commonwealth Ct. at 179-80, 309 A.2d at 177-78.

Our next decision was *Commonwealth ex rel. Pittenger v. Leechburg Area School Board,* 19 Pa. Commonwealth Ct. 140, 339 A.2d 149 (1975), which was a mandamus action within our original jurisdiction seeking an order directing respondent to make up four pupil instruction days lost during a teachers' strike by adding them to the regularly scheduled school year. In denying petitioners' motion for judgment on the pleadings, the Court en banc with two Judges dissenting said:

The plaintiffs contend that the duty thus imposed on the defendant is mandatory and ministerial and therefore enforceable in mandamus. The defendant answers that it originally scheduled the required 180 days and that the addition of four days to the school calendar would work hardship on students and their families and would be impractical in the circumstances. The defendant relies on our decision and accompanying opinion in Root v. Northern Cambria School District, 10 Pa. Commonwealth Ct. 174, 309 A.2d 175 (1973), where we held that the refusal by a trial judge of an injunction requiring a school

district to schedule school on every weekday from December 30 until the end of June was not an abuse of the court's discretion. We declared in Root, supra, that school boards must schedule 180 days of instruction (as the defendant here did); that the requirement of 180 days of instruction must be adhered to unless it is impossible or impractical to do so for reasons not within the board's control; and that if it is impossible or impractical to provide the number of days required, boards must nevertheless amend their schedules so as to provide as many days as sound educational practice requires. We further stated that the 180 day standard may not be sacrificed [sic] merely to save money and that the refusal by a board to schedule a few days easily supplied might constitute an abuse of its power.

19 Pa. Commonwealth Ct. at 141-42, 339 A.2d at 150-51.

This was followed by *Pittenger v. Union Area School Board,* 24 Pa. Commonwealth Ct. 442, 356 A.2d 866 (1976). This was another mandamus action to compel a local school board to reschedule five pupil instruction days lost during a school strike. Following an evidentiary hearing, the respondent school district was ordered to revise its school calendar to make up the lost days. The Court en banc[5] was unanimous in the result but at least arguably was evenly divided as to the impact of the decision upon the Court's prior decision in *Root.* Judge MENCER speaking for the Court said:

[W]e are of the view that Root can be fairly distinguished from the instant case. However, to avoid any confusion over this issue of public

---

[5] Consisting of six Judges because of the nonparticipation of Judge KRAMER.

importance, with its recurring nature, we wish to indicate that, if there is any inherent conflict between our holding in Root and today's decision, our holding here prevails and any inconsistent portions of Root are overruled.

24 Pa. Commonwealth Ct. at 448, 356 A.2d at 869.

However, in a concurring opinion by Judge WILKINSON, joined in by Judges ROGERS and BLATT, it is said:

> I concur in the result reached by the majority, but in doing so, I do not denigrate or minimize our decision in Root v. North Cambria School District, 10 Pa. Commonwealth Ct. 174, 309 A.2d 175 (1973). I continue to be of the opinion that it is within the discretion of the school board as to whether the school calendar should be altered to make up the days missed. However, in this instance, the Board has abused its discretion. In my opinion, under the facts presented here, the Board is under a clear duty to modify the previously established calendar. In this regard, it is not only unnecessary to distinguish Root, much less overrule it, but, indeed, this decision is in entire accord. (Footnote omitted.)

24 Pa. Commonwealth Ct. at 449, 356 A.2d at 870.

The most recent pronouncement on this subject is that of the late Judge KRAMER, who, as a hearing Judge, denied an application by the Secretary of Education for peremptory judgment directing a local school district to make up nineteen days of pupil instruction lost by a teachers' strike. *Commonwealth v. Mifflin County School Board*, 30 Pa. Commonwealth Ct. 213 (1977). In his opinion supporting the denial of peremptory judgment, he analyzed our decisions in *Root, Leechburg* and *Union Area* and concluded as follows:

The key question remaining for resolution is whether and to what extent Union Area has overruled Root and, by implication Leechburg. The posture of Union Area forces the Court to conclude that Root and Leechburg remain undisturbed by Union Area, despite statements to the contrary in Judge MENCER's opinion. As noted previously, only three of the six participating Judges were of the opinion that Root had to be overruled insofar as it was inconsistent with the result reached in Union Area. The other three participating Judges were of the view that the result reached was wholly in accord with the principles set forth in the opinion in Root. Because less than a majority of the participating judges voted for the opinion announcing the judgment of the Court, the opinion is not decisional on the disputed points. Commonwealth v. Lasch, 464 Pa. 259, 263, 346 A.2d 547, 549 (1975); Commonwealth v. Davenport, 462 Pa. 543, 559 n. 3, 342 A.2d 67, 75 n. 3 (1975); Commonwealth v. Silverman, 442 Pa. 211, 218 n. 8, 275 A.2d 308, 312 n. 8 (1971). Thus, Root and Leechburg remain undisturbed as precedent in cases under Section 1501 of the Code.

30 Pa. Commonwealth Ct. at 220.

Thus, the late Judge KRAMER, being of the view that Root and Leechburg remain undisturbed as precedent, felt bound as a hearing Judge to apply their holdings in denying petitioners' application for peremptory judgment.

As the hearing Judge in this case agrees with the late Judge KRAMER's analysis of our prior decisions, we too consider Root and Leechburg precedential and binding. Accordingly, the declaratory judgment count of the petition for review which would have us declare as a matter of law that the provisions of Section 1501

of the Code mandate that 180 days of pupil instruction be afforded each school year regardless of the educational soundness of rescheduling lost days by reason of a teachers' strike must be dismissed.

## ORDER

Now, November 28, 1979, it is hereby ordered as follows:

1. The counts of the petition for review in the nature of mandamus and equity are dismissed.

2. The count of the petition for review in the nature of declaratory judgment seeking a judicial declaration that respondent abused its discretion in not affording 180 days of pupil instruction for the school year 1978-79 is dismissed.

3. The count in the petition for review in the nature of declaratory judgment seeking a judicial declaration that Section 1501 of the Public School Code of 1949 mandates that 180 days of pupil instruction be afforded each school year regardless of the educational soundness of rescheduling lost days by reason of a teachers' strike is dismissed.

4. Unless exceptions are filed within thirty (30) days of the date hereof, the Chief Clerk is directed to enter judgment on this Order.