586 A.2d 1038

**Wilfred FREIDHOFF, Mary Galbraith, Ruth Domer et al., Appellants,**

**v.**

**BOARD OF SCHOOL DIRECTORS OF CONEMAUGH VALLEY SCHOOL DISTRICT, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Oct. 3, 1990.

Decided Feb. 11, 1991.

556

William K. Eckel, Johnstown, for appellants.

Thomas M. Kalinyak, with him, John J. Kuzmiak, Johnstown, for appellee.

Before CRAIG, President Judge, and DOYLE, COLINS, McGINLEY, PELLEGRINI, KELLEY and BYER, JJ.

CRAIG, President Judge.

Wilfred Freidhoff, et al., teachers, appeal an order of the Court of Common Pleas, Cambria County, denying their motion for judgment notwithstanding the verdict, and also their alternative motion for new trial, following a jury verdict in favor of the Board of School Directors of Conemaugh Valley School District, board. We affirm in part, reverse in part, and remand.

The general question arises from the fact that, after a school strike which resulted in thirty-three lost days of instruction and after a weather emergency eliminating eleven more days of instruction, the school board, by rescheduling, arranged for 160 of the required 180 days of instruction during the remaining school year. Is there a legal or factual basis for deciding that the teachers should receive compensation for 180 days instead of the actual number of instruction days worked?

On June 30, 1981, eighty-eight teachers (now eighty-four) from the Conemaugh Valley School District brought this civil action against the board for back wages during the 1976–77 school year.

The events leading up to the suit are as follows: From August 30, 1976 through October 15, 1976, the teachers participated in a strike. The parties agreed to a contract on October 16, 1976, and the teachers returned to work on October 18. Both parties signed the contract on December 10, 1976.

In January and February of 1977, severe weather and fuel shortages caused the cancellation of school for nine days in January and two days in February. Not until February 3, 1977, did the board revise the school calendar and expand the school year through June 30, 1977, the last

day permitted by section 1502 of the Public School Code of 1949 [1] as an instructional day.

The board's original calendar, if followed, would have provided for 180 instructional days and two in-service days. The revised calendar provided for 160 instructional days and two in-service days. The board paid the teachers for 162 days, subtracting twenty days' pay from each teacher's salary.

In this action, the teachers demand back wages for the twenty days not re-scheduled. The case was tried by jury in the Court of Common Pleas, Cambria County. The jury returned a verdict for the board.

After the verdict, the teachers filed their post-trial motions. The trial judge denied the teachers' motions by order dated November 2, 1989. The teachers now appeal to this court, seeking to reverse the trial court, vacate the jury verdict, and direct judgment notwithstanding the verdict in their favor.[2]

The teachers contend that the trial court erred in its interpretation of two statutes: The Code and the Weather Emergency Act of 1977 (Act) [3].

Section 1501 of the Code states: "All public kindergartens, elementary and secondary schools shall be kept open each school year for at least one hundred eighty days of instruction for pupils...."

The Weather Emergency Act of 1977 provides:

1. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 15–1502, which provides that the board may not schedule instructional days on Saturday nor schedule instructional or in-service days on Memorial Day, 4th of July, Christmas, nor past June 30.

2. Our scope of review when considering a motion for judgment notwithstanding the verdict is limited to determining whether there was sufficient competent evidence to sustain the verdict, granting the verdict winner the benefit of every reasonable inference reasonably to be drawn from the evidence and rejecting all unfavorable testimony and inferences. *Cabell v. City of Hazleton,* 96 Pa.Commonwealth Ct. 129, 506 A.2d 1001 (1986).

3. Act of June 1, 1977, P.L. 4, formerly 24 P.S. § 15–1501.1, expiring June 30, 1977.

(a) ... No employe of any school closed by reason of the Weather Emergency of 1977 shall receive more or less compensation than that to which the employe would otherwise have been entitled to ... had the Weather Emergency of 1977 not occurred.

(b) An employe shall not receive additional salary for services rendered on days ... rescheduled as a result of the Weather Emergency of 1977, unless the number of days rescheduled extends the number of days provided for in the original school calendar....

24 P.S. § 15–1501.1(a), (b).

At trial, after the close of evidence, the teachers moved for a directed verdict, contending that the two statutes above provided that, as a matter of law, the teachers were entitled to a judgment in their favor. The trial court, interpreting section 1501 and the Act, stated that the two statutes presented factual issues properly submitted to the jury and denied the teacher's motion.

The key issues are: (1) Whether the board had a duty, as a matter of law, to revise the calendar promptly in October or whether that was a proper factual issue for the jury; (2) if the board's rescheduling of the strike days is found to have been proper when done, whether the Act requires the board to pay the teachers for days missed due to the weather emergency, and (3) whether the trial court properly nonsuited nine teachers who failed to appear at trial.

### 1. The Duty to Revise the School Calendar

■ The teachers contend that section 1501, as interpreted by this court in *Scanlon v. Mt. Union Area Board of School Directors*, 51 Pa.Commonwealth Ct. 83, 415 A.2d 96 (1980), *aff'd*, 499 Pa. 215, 452 A.2d 1016 (1982)[4], placed a duty, as a matter of law, upon the board to revise the school

4. Although Scanlon was decided in 1980, it is applied retroactively pursuant to the holding in *Babcock and Wilcox & Co. v. Workmens Compensation Appeal Board (Forrest)*, 63 Pa.Commonwealth Ct. 61, 437 A.2d 778 (1981).

calendar promptly at the conclusion of the teacher's strike.[5] Therefore, the teachers contend, the trial court erred when it did not direct a verdict in their favor.

The board, however, argues that the duty in *Scanlon* is not as broad as the teachers believe. The board relies upon *Root v. Northern Cambria School District,* 10 Pa.Commonwealth Ct. 174, 309 A.2d 175 (1973), for the proposition that "[b]oards must schedule 180 days ... or if unavoidable causes prevent ... provide as many days as sound educational practice would indicate." *Id.,* 10 Pa.Commonwealth Ct. at 180, 309 A.2d at 178. The board contends that determination of the existences of "unavoidable causes" is a factual matter that was properly submitted to the jury and decided in the board's favor.

Thus, the first issue is whether, as a matter of law, the board had a duty to reschedule for 180 days of classroom instruction promptly at the conclusion of the teachers' strike.

In *Scanlon,* this court held that section 1501 places "a mandatory minimum number of days on which schools 'shall be kept open,' which minimum may not be obviated by other than the impossibility of compliance with that requirement within the terms of the entire School Code." *Scanlon,* 51 Pa.Cmwlth. at 89, 415 A.2d at 98.

*Scanlon* addressed the *Root* case and stated, "we depart from the opinion in Root, supra, only insofar as it may imply that strike activity or other interruption of instruction categorically modifies the obligation of the boards to pro-

5. If the board had rescheduled the calendar promptly after the strike in October instead of waiting until February to do so, 180 instructional days could have been achieved assuming that no weather emergency occurred. The board could have scheduled instructional days on days originally planned as school holidays. There were three days in November, six days in December one day in January, and one day in April originally scheduled as school holidays (aside from the legal holidays) that could have been rescheduled as instructional days within the provisions of The Code. Adding these eleven days to the eighteen days made up in June would have made up twenty-nine of the thirty-three strike days and provided for more than 180 instructional days.

vide 180 days of instruction for pupils." *Scanlon,* 51 Pa.Cmwlth. at 89, 415 A.2d at 98.

Although *Scanlon* did not entirely overrule *Root,* it did revise the test as to when the duty to schedule 180 days is obviated. This court in *Scanlon* explained that the only time strike activity and unavoidable delay modify the board's duty to schedule 180 instructional days is when "that disruption is so extensive as to preclude the possibility of 180 days of pupil instruction *within the statutory year* (emphasis in original)." *Scanlon,* 51 Pa.Cmwlth. at 90, 415 A.2d at 99.

Because there is no precise time limit that the board must follow when rescheduling instruction days, the trial court did not err in submitting to the jury the factual question of whether the disruption was so extensive that the board's duty to schedule 180 days was modified. No precise timetable can be prescribed by the courts for boards to follow after strikes because the facts and circumstances are different in every case.

■ Furthermore, there is evidence to support the jury's finding that the board's delay was reasonable, because the non-professional employees were not under contract until December. Therefore, the board did not violate section 1501 of the Code.

*2. Salary Entitlement Due to the Weather Emergency*

■ The teachers also contend that the Act provides that the board may not, as a matter of law, deduct salary for days missed during the weather emergency.

The trial court, interpreting the Act, stated:

[I]f the days missed because of the Weather Emergency were rescheduled, Plaintiffs [teachers] would not be entitled to additional compensation 'unless the number of days rescheduled extends the number of days provided for in the original school calendar ...' 24 P.S. § 15–1501.1(b). As the original calendar provided for 180 days of instruction and the revised calendar provided for 160, no additional compensation could be claimed.

Thus, the second issue is whether the trial court properly construed the Act, and whether the Act provides a factual issue for a jury to decide.

In *Montour School District v. Montour Education Association*, 53 Pa.Commonwealth Ct. 463, 417 A.2d 1331 (1980), the teachers were unable to agree upon a collective bargaining agreement for the 1976–77 school year, which resulted in two strikes in the fall of 1976. After the second strike, the board revised the school calendar, rescheduling all but five of the strike days. The five days could not be made up because the board could not extend the school year past June 30.

In the winter of 1977, fuel shortages and severe weather forced the cancellation of school for twelve days. Those twelve days could not be rescheduled, because the revised schedule extended to June 30. The Montour board refused to pay the teachers for the twelve weather emergency days missed.

This court, holding that the teachers should have received compensation for the twelve days, stated:

> [W]ere it not for the weather emergency, the teachers would have been entitled to the adjusted salary agreed upon following the second strike. Under the mandate of Section 1501.1, appellant [board] cannot pay its teachers less than that to which they would otherwise have been entitled.

*Montour*, 53 Pa.Commonwealth Ct. at 467–68, 417 A.2d at 1334.

Furthermore, in *Trinity Area School District v. Trinity Area Education Association*, 49 Pa.Commonwealth Ct. 379, 412 A.2d 167 (1980), this court upheld an arbitration award that found that the Act prohibited a school district from denying compensation to teachers for weather emergency days missed but not rescheduled because of a two-month strike.

In its opinion, the trial court relied upon section 1501.1(b) of the Weather Emergency Act for the proposition that compensation for weather emergency days is "additional

compensation" subject to the provisions of section 1501.1(b). However, section 1501.1(a) states that the teachers are to receive the same salary they would have received had the weather emergency not occurred. If the emergency had not occurred, the board could have scheduled 171 instructional days when it revised the schedule on February 3.[6] Therefore, the Act, as a matter of law, entitles the teachers to the same salary they would have received had the weather emergency not occurred, a salary reflecting 171 instruction days.

■ Additionally, the trial court erred in submitting to the jury the question of whether the board rescheduled weather days or strike days in June. If the emergency had not occurred, the board, back in February, could have scheduled 171 instructional days. Whether the made-up days in June are labeled as weather days or strike days is irrelevant because the Act states that the teachers are to be compensated as if the weather emergency had not occurred.

### 3. The Nonsuit of Nine Teachers

■ The final issue is whether the trial court properly nonsuited nine teachers among the named plaintiffs who failed to appear at trial in person.

The record indicates that nine teachers with claims failed to come to court personally. The board asserts that the trial court properly nonsuited them pursuant to Pa.R.C.P. No. 218, which provides: "[W]hen a case is called for trial, if without satisfactory excuse a plaintiff is not ready, the court may enter a nonsuit on motion of the defendant...." The board also complains about the lack of opportunity to cross-examine those nine teachers.

6. On February 3, the board revised and extended the calendar to June 30, the last allowable day for instructional days, which gave the district 160 instructional days. If the weather emergency had not occurred, those would have been eleven additional instructional days before February 3. Therefore, if the weather emergency had not occurred, the board could have rescheduled for 171 instructional days.

Here, the salient issue arising under Rule 218 is whether the nine plaintiffs were "ready for trial." Our precedents establish that a party is "ready for trial" if counsel representing that party is in court ready to proceed, even if the party is not present in person. A party is entitled to rely upon the right to be represented by counsel. The Judicial Code, 42 Pa.C.S. § 2501(a), states: "In all civil matters before any tribunal every litigant shall have a right to be heard, by himself and his counsel, *or* by either of them. . . ." (Emphasis added.)"

The concept of a party relying upon the representation of counsel is a longstanding one. *Crumley v. Lutz*, 180 Pa. 476, 36 A. 929 (1897), stated: "The settled practice is, where the plaintiff does not appear in person *or by attorney* when his case is called for trial, to enter a nonsuit." *Id.*, 180 Pa. at 479, 36 A. at 929 (emphasis added). Also, *Levison v. Blumenthal*, 25 Pa.Superior Ct. 55 (1904), stated: "It is a rule of the common law that no verdict can be given unless the plaintiff by himself *or attorney* appear in court." *Id.* at 60 (emphasis added).

The record indicates that the teachers' attorney was present and prepared for trial. Therefore, the nine absent teachers, as well as other teachers, were ready for trial pursuant to Rule 218.

Although the teachers' absence therefore was not determinative, we note further that their absence did not leave the record incomplete as a practical matter. Moreover, their absence caused no harm with respect to the board's right of cross-examination because the material evidence as to each of the eighty-four teachers was identical. The teachers established that the payroll record of one teacher from the 1976–77 school year accurately reflected the situation of all the plaintiffs, including the nine absent teachers. This payroll record, which the teachers submitted as indicative of the board's action towards the eighty-four teachers respectively, shows the teacher's salary, payment schedule, taxes, and calculation used by the board to deduct the twenty days of pay.

Additionally, the business manager of the school district, Helen Slavick, testified as follows:

Q. Have you been able to find, you say you have payroll sheets for each professional employee who was on the staff for the 76–77 school year?

A. Yes, sir.

Q. Do you have one for Sharon Santichen? [a teacher who testified earlier and whose payroll sheet was introduced into evidence]

A. I do, sir.

Q. Would Sharon Santichen's sheet that you prepared, would that, would you, or would that be similar in make-up and calculation to other professional employee staff people?

A. It would be. They are all identical if they'd worked that school year for 162 days, 160 instructional days and 2 inservice days. The calculation would be identical for all of them.

. . . .

Q. Miss Slavick, just so we confirm this, you have, an identical sheet in terms of calculations but certainly not numbers for all other professional employees staff members for that year?

A. For everybody that had worked 162 days for that year. All sheets should be identical.

Accordingly, the trial court's order regarding the duty of the school board to schedule 180 days is affirmed, the denial of eleven days compensation due to the weather emergency is reversed and this case is remanded for computation of wages on the total basis of 171 instructional days, and the nonsuit is reversed.

## ORDER

NOW, February 11, 1991, the order of the Court of Common Pleas of Cambria County, at No. 1981–2571, dated November 2, 1989, is affirmed in part, reversed in part and the case remanded. The denial of judgment notwithstand-

ing the verdict regarding the school board's duty to schedule 180 days is affirmed. The denial of judgment notwithstanding the verdict regarding the compensation for the eleven weather days is reversed, and this case is remanded for computation of total damages, including the amount of compensation for those eleven weather emergency days. The nonsuit of nine plaintiffs is reversed.

Jurisdiction relinquished.

McGINLEY, Judge, dissenting.

I respectfully dissent in part. I would not reverse the nonsuit of the nine absent plaintiffs regardless of the presence of their attorney and despite the fact that the material evidence was substantially and materially equivalent for all claims.

The trial court specifically informed counsel that the plaintiffs were to appear in person for cross-examination. There is no need for a subpoena in such circumstances. In any event, there is a very real possibility that the non-appearing plaintiffs did not intend to pursue their claims. Their failure to appear when directed by the court implies just that.

I would affirm the trial court's nonsuit.