IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Open PA Schools, Jamie Walker, : 
Tara Adams, James Holt, Felix P. : 
Mummolo, Stacey McShane, Jaret : 
Matthew Gale, Patrice Silver, Joe : 
Dettore, Sr., Chris Brill, and Beth : 
Rosica, : 
                     Petitioners : 
                     : 
                     : 
           v. : 
                     : 
Department of Education of the : 
Commonwealth of Pennsylvania, : 
Pedro A. Rivera, Secretary of Education : 
of the Commonwealth of Pennsylvania, : 
Central Bucks School District, : 
Downingtown Area School District, : 
Oley Valley School District, : 
Unionville-Chadds Ford School District, : 
Perkiomen Valley School District, : 
Great Valley School District, and : 
West Chester School District, :   No. 504 M.D. 2020
                     Respondents :   Argued: December 9, 2020


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge[1]
              HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE J. ANDREW CROMPTON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED: January 14, 2021

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt completed her term as President Judge.

This matter concerns a Petition for Review (Petition) brought pursuant to the Declaratory Judgments Act[2] by Petitioners, who are Open PA Schools, "an unincorporated association consisting of over one hundred parents of children attending public schools throughout the Commonwealth" and 10 individual parents who opposed the decisions of their local school districts to begin the 2020-21 school year on a largely or entirely remote learning basis in light of the COVID-19 pandemic. Petition at 5-12. Petitioners assert that the districts' actions violate Section 1501 of the Public School Code of 1949[3] (School Code), which states that all public kindergarten, elementary, and secondary schools "shall be kept open each school year for at least one hundred eighty (180) days of instruction for pupils." 24 P.S. § 15-1501.

Currently before this Court for disposition are Petitioners' Application for Expedited Summary Relief with regard to their Petition and various Preliminary Objections filed by Respondents, who are the Commonwealth's Department and Secretary of Education (Department) and seven suburban school districts in the Philadelphia area in which the individual Petitioners are parents.[4] Upon review, we sustain Respondents' objections on the basis of standing, dismiss Respondents' additional preliminary objections as moot, deny Petitioners' Application for Expedited Summary Relief, and dismiss Petitioners' Petition without prejudice.

---

[2] 42 Pa.C.S. §§ 7531-7541.

[3] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101–27–2702.

[4] The responding school districts are: Central Bucks School District, Downingtown Area School District, Great Valley School District, Oley Valley School District, Perkiomen Valley School District, Unionville-Chadds Ford School District, and West Chester Area School District.

## I. Factual and Procedural Background

On March 27, 2020, at the onset of the COVID-19 pandemic, the General Assembly enacted Section 1501.8(b)(1) of the School Code, effective immediately, which stated in pertinent part: "The requirement under [S]ection 1501 requiring all school entities to be kept open each school year for at least one hundred eighty (180) instructional days is waived immediately." 24 P.S. § 15-1501.8(b)(1).[5] Applicable only to the 2019-20 school year, the legislation also authorized the Department to close school buildings and "[i]ncrease the number of flexible instructional days that school entities may institute under [Section 1506 of the School Code[6]] to a number of flexible instructional days determined by the Secretary of Education during the 2019-20 school year." 24 P.S. § 15-1501.8(a) & (b)(2)(i), (ii).

The General Assembly did not renew Section 1501.8 for the 2020-21 school year, but on June 5, 2020, it enacted Section 1501.9, which stated: "Beginning in the 2020-[21] school year, the minimum number of school days under section 1501 shall apply notwithstanding any order issued under a declaration of disaster emergency under 35 Pa.C.S. § 7301(c) (relating to general authority of Governor)." 24 P.S. § 15-1501.9.[7] Thus, the minimum requirement of 180 school days has never been altered for the 2020-21 school year; at issue here is whether instruction may occur remotely or whether it must be conducted in person at school buildings.

---

[5] Section 1501.8 was added by Section 4 of the Act of March 27, 2020, P.L. 62.

[6] Section 1506(h)(2) was added by Section 1 of the Act of July 2, 2019, P.L. 396. It became effective on Sept. 3, 2019, and allows school districts to provide up to five "flexible instructional days" per school year in which schools may teach students remotely when a school building cannot be opened due to hazardous weather, building damage, or "a disease epidemic." 24 P.S. § 15-1506(h)(2).

[7] Section 1501.9 was added by Section 10 of the Act of June 5, 202, P.L. 223.

Shortly thereafter, during the summer of 2020, the Department issued an official policy (Policy), available on its website, stating that it "recognizes that school leaders face many difficult decisions and challenges in planning for the start of the 2020-[21] school year and determining how to provide students with a minimum of 180 days of instruction and 900 hours of instruction at the elementary level and 990 hours of instruction at the secondary level."  Department's COVID-19 Policy for 2020-21 School Year.[8]  The Policy cited Section 520.1 of the School Code ("Temporary emergency provisions"), which states:

> (a) Whenever an emergency shall arise which the board of school directors of any school district in the performance of its duties could not anticipate or foresee, and which emergency shall result in any such school district being unable to provide for the attendance of all pupils during the prescribed length of school days, number of days per week, or usual hours of classes, it shall be found as a fact by the school directors of any school district and so recorded on the minutes of a regular or special meeting of such board and certified to the Superintendent of Public Instruction, and such board of school directors, subject to the approval of the Superintendent of Public Instruction, shall have power to put into operation in such school district any one or more of the temporary provisions hereinafter provided for, but in no event shall such temporary provisions remain in effect for a period of more than four years after they are first put into effect.
>
> (b) Subject to the foregoing provisions, any board of school directors may:

---

[8]  *See*  https://www.education.pa.gov/Schools/safeschools/emergencyplanning/COVID-19/SchoolReopeningGuidance/ReopeningPreKto12/Pages/InstructionalHours.aspx (last visited Jan. 13, 2021).

(1) Keep the schools of the district in session such days and number of days per week as they shall deem necessary or desirable, but the provisions of this act requiring a minimum of one hundred eighty (180) session days as a school year shall not be affected thereby.

(2) Reduce the length of time of daily instruction for various courses and classes.

(c) Any school district, by invoking the powers herein granted, shall not thereby forfeit its right to reimbursement by the Commonwealth or other State[]aid as otherwise provided for by this act.

24 P.S. § 5-520.1.[9]  The Policy promulgated by the Department in the summer of 2020 set forth the Department's conclusion that the COVID-19 pandemic constitutes an emergency as contemplated by Section 520.1.  *See* Policy ("[The Department] considers the World Health Organization-declared Coronavirus disease (COVID-19) global pandemic an emergency as contemplated by [S]ection 520.1.").  As such, school districts across the Commonwealth were authorized, upon Departmental approval, to enact temporary provisions for the 2020-21 school year, including arrangements for instruction in "a remote learning environment" in excess of the five days of flexible instructional days permitted by Section 1506.  *See* Policy.  The Policy further states:

> Additionally, Chapter 11 [of the Department's regulations] requires that "instruction time for students shall be time in the school day devoted to instruction and instructional activities provided as an integral part of the school program ***under the direction of certified school employees***."  22 Pa. Code § 11.2 (emphasis added).  Although instruction may be provided in synchronous or

---

[9] Section 520.1 was added by Section 1 of the Act of January 14, 1952, P.L. (1951) 1940.

5

asynchronous formats,[10] to count as instruction—whether in the classroom or remotely—students' instructional activities must be under the direction of a certified school employee, unless otherwise permitted [by Section 1724-A of the School Code[11]].

Any school entity that includes time spent in a remote learning environment toward instructional time requirements must implement a system that accurately tracks out of school instructional time similar to attendance in the school building.

Policy (emphasis in original).

In response to the Department's Policy, prior to the beginning of the 2020-21 school year, school districts across the Commonwealth, including the responding school districts in this matter, surveyed and worked with local school and health personnel and student families to determine opening plans, ranging from 100% remote learning through hybrid models and 100% in-person instruction. *See, e.g.*, Affidavit of Dr. Daniel F. Goffredo, Ed.D., Superintendent of Great Valley School District (GVSD); Exhibit A to GVSD Response to Petition. Like many school districts across the Commonwealth, the responding school districts decided to open the school year providing fully or almost fully remote learning based on, *inter alia*, local and county health department guidance. *Id.*

Petitioners filed the subject Petition on September 8, 2020, invoking this Court's original and ancillary jurisdiction and asserting that the Department's

---

[10] Synchronous learning in a remote teaching setting occurs when the teacher and students are together and working interactively at the same time, as in a live online class with sound and video presence; asynchronous learning in a remote teaching setting occurs when the teacher sets a learning path or plan and students work on their own time and at their own pace. *See* https://www.brynmawr.edu/blendedlearning/asynchronous-vs-synchronous-learning-quick-overview (last visited Jan. 13, 2021).

[11] Section 1724-A was added by Section 1 of the Act of June 19, 1997, P.L. 225.

Policy allowing the responding districts' determination to begin the school year in a largely or entirely remote learning capacity violates the School Code's requirement that school districts provide 180 school days in the 2020-21 school year, that the Policy should be declared void, and that fully remote learning days should not be counted towards the 180-day requirement. Petition at 4, 13-14. On September 9, 2020, Petitioners filed an Application for Expedited Summary Relief asserting that there are no material facts in dispute, that the case presents a pure question of law, and that with the school year already started or about to start, any delay in issuing a decision will cause irreparable harm to all of the parties. Application for Expedited Summary Relief, 9/9/20, ¶¶ 3-5 & Prayer for Relief.[12]

In a brief in support of their Application, Petitioners argue that the 180-day requirement is mandatory even in emergencies, requires in-person learning, and can only be altered by the General Assembly. Petitioners' Brief in Support of Application for Expedited Summary Relief at 1-3, 8, 12 (citing *Scanlon v. Mt. Union Area Bd. of Sch. Dirs.*, 415 A.2d 96 (Pa. Cmwlth. 1980)). Petitioners acknowledge that the School Code does not define "open . . . for the purposes of instruction" as that language appears in Section 1501. However, Petitioners posit that "when the School Code is read as a whole[,] it is clear that the legislature intended that schools must provide [] in person, not remote, instruction." Petitioners' Brief in Support of Application for Expedited Summary Relief at 8.

---

[12] Petitioners cite Pennsylvania Rule of Appellate Procedure 1532(b): "At any time after the filing of a petition for review in an appellate or original jurisdiction matter, the court may on application enter judgment if the right of the applicant thereto is clear." Application for Expedited Summary Relief at 1 (citing Pa.R.A.P. 1532(b)). Summary relief is "similar to summary judgment under the Pennsylvania Rules of Civil Procedure, in that the requested relief is only appropriate where there are no disputed issues of material fact and it is clear that the applicant is entitled to the requested relief under the law." *See Scarnati v. Wolf*, 173 A.3d 1110, 1118 (Pa. 2017).

Petitioners read Section 1506, which enables districts to provide up to five flexible instructional days per year when circumstances, including a "disease epidemic," "prevent a school building from opening," as meaning therefore that "open . . . for the purposes of instruction" as set forth in Section 1501 must mean that schools are physically open and providing in-person instruction in order for days to count towards the 180-day requirement. Petitioners' Brief in Support of Application for Expedited Summary Relief at 9-10. Petitioners reason that despite the current circumstances, allowing districts to exceed the five flexible instruction days permitted by Section 1506 renders Section 1506 superfluous, which could not have been the General Assembly's intent. *Id*. at 11.

Petitioners challenge the Department's position that Section 520.1 of the School Code confers upon the Department discretion and authority to allow districts to conduct largely or entirely remote teaching at the outset of the 2020-21 school year in light of the COVID-19 pandemic and to have those days count towards the 180-day minimum requirement. Petitioners' Brief in Support of Application for Expedited Summary Relief at 3. Petitioners aver that Section 520.1, read strictly, allows districts only to extend the school week or shorten the school day, and that the Department's Policy therefore violates the School Code. *Id*. at 1-2, 5, 11-13.

Petitioners cite *Scanlon*, in which a teacher strike during the 1978-79 school year deprived the district in question of 22 school days. Petitioners' Brief in Support of Application for Expedited Summary Relief at 14-15 (citing *Scanlon*, 415 A.2d at 97). Once the strike ended, the district sought to minimize that school year to 165 days of in-person instruction. *Scanlon*, 415 A.2d at 97. The Department challenged the district's plan as violative of Section 1501's mandatory 180-day

8

requirement and this Court agreed, stating that despite the strike and the lost school days, holding a 180-day school year was not impossible and that deviation from the 180-day requirement is "allowed only by the legislature." *Id.* at 99.

Here, Petitioners argue that the General Assembly acted in March 2020 when it permitted remote learning for the remaining duration of the 2019-20 school year. They reason that the legislature's failure to repeat that action for the 2020-21 school year renders the Department's decision to do so on its own invalid as an action outside its statutory authority. Petitioners' Brief in Support of Application for Expedited Summary Relief at 16-18.

Petitioners state that they do not call for immediate cessation of remote learning or that schools must physically open; they only seek declaratory judgment to the effect that remote learning days will not count towards the 180-day requirement and that students will receive at least 180 days of in-person instruction during the 2020-21 school year. Petitioners' Brief in Support of Application for Expedited Summary Relief at 3. They ask for summary relief so that in the event they are successful in this matter, school districts will have "sufficient time to revise their school calendars to make up the fully remote instruction days with in[-]person instruction required by the School Code" and also to "provide the General Assembly time to pass necessary legislation should it deem necessary, just as it did in March of this year." *Id*. at 7.

Respondents variously filed answers to Petitioners' Application for Expedited Summary Relief and briefs in support thereof, followed shortly by preliminary objections and briefs in support thereof. Respondents collectively raised numerous challenges to Petitioners' Petition, including lack of standing, failure to exhaust administrative remedies, lack of subject matter jurisdiction, failure to join

necessary and indispensable parties, and legal insufficiency. Petitioners filed answers and a brief in opposition to Respondents' preliminary objections, generally denying Respondents' various assertions, and a reply brief to Respondents' challenges to Petitioners' Application for Expedited Summary Relief. This Court issued a notice setting the matter for *en banc* oral argument on December 9, 2020. *See* Notice, 11/9/20. Argument was conducted remotely on that date and this matter is now ripe for determination.

## II. Discussion – Preliminary Objections to Standing

Respondents' preliminary objections include a challenge to Petitioners' standing to bring this action.[13] *See, e.g.*, Preliminary Objections of GVSD at 5. Our Supreme Court addressed the question of when a party has demonstrated that it is sufficiently "aggrieved" by a governmental action to establish standing in *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269 (Pa. 1975) (plurality).[14] There, nine operators of commercial parking facilities and a number of individual Pittsburgh residents and taxpayers challenged a City ordinance imposing a 20% tax on all commercial parking in the City. *Id*. at 275. The City filed preliminary objections contending, *inter alia*, that none of the would-be plaintiffs

---

[13] Our review of preliminary objections is limited to the pleadings (here, Petitioners' Petition for Review) and proper attachments. *Scarnati v. Dep't of Env't Prot.*, 220 A.3d 723, 728 (Pa. Cmwlth. 2019). Preliminary objections are deemed to admit all well-pled material facts and any inferences reasonably deduced therefrom. *Id*. This Court, however, is not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion within a petition for review. *Id*.

[14] *William Penn Parking Garage* is a plurality opinion as to its treatment of whether a pecuniary interest is required to assert standing in the context of a taxpayer challenge. *See id*. at 295-96 (Eagen, J., concurring, with Jones, C.J., & Pomeroy, J.; Nix, J., concurring in result). Nevertheless, the opinion's presentation of the principles of standing has been widely cited in cases not concerning or limited to taxpayer standing. *See, e.g., Johnson v. American Standard*, 8 A.3d 318 (estate executors had standing to challenge constitutionality of statute limiting successor liability for asbestos-related injuries and deaths).

10

were aggrieved by the ordinance so as to establish taxpayer standing. *Id.* The trial court found in favor of the City, this Court reversed, and our Supreme Court granted the City's petition for allowance of appeal. *Id.* at 275-76.

On the question of standing, the Court set forth and discussed at length the principles at issue for a party seeking to challenge a government action, concluding that "one who seeks to challenge governmental action must show a direct and substantial interest. . . . In addition, he must show a sufficiently close causal connection between the challenged action and the asserted injury to qualify the interest as immediate rather than remote." *Id.* at 286 (internal quotation marks and footnotes omitted).

Our Supreme Court has further explained that standing is a threshold matter and that "a controversy is worthy of judicial review only if the individual initiating the legal action has been 'aggrieved.' This principle is based upon the practical reason that unless one has a legally sufficient interest in a matter, that is, is 'aggrieved,' the courts cannot be assured that there is a legitimate controversy." *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 659-60 (Pa. 2005) (internal cites omitted). "The keystone to standing in these terms is that the person must be negatively impacted in some real and direct fashion. . . . [I]t is not sufficient for the person claiming to be 'aggrieved' to assert the common interest of all citizens in procuring obedience to the law." *Id.* at 660 (internal quotation marks and citation omitted).

To have standing, a party must plead facts which establish a direct, immediate and substantial injury. *Pa. Chiropractic Fed'n v. Foster*, 583 A.2d 844, 851 (Pa. Cmwlth. 1990). Preliminary objections to a petition are properly sustained for lack of standing where the petition "does not allege expressly or by necessary

11

implication that [the petitioner] is directly, immediately, or substantially affected by [the challenged provision]." *Id.* at 851. If a petition contains only "general averments" or allegations that "lack the necessary factual depth to support a conclusion that the [petitioner] is an aggrieved party," standing will not be found. *Pa. State Lodge, Fraternal Ord. of Police v. Dep't of Conservation & Nat. Res.*, 909 A.2d 413, 417 (Pa. Cmwlth. 2006) (citing *William Penn Parking Garage*). Moreover, the harm asserted must be actual; an allegation of only a potential harm does not give rise to standing to bring a lawsuit. *Id.*

Here, Respondents variously assert that Petitioners fail to plead sufficient and specific harm or injury to support standing for either the individual Petitioners or Open PA Schools. GVSD states that the Petition "includes no factual allegations of any harm" to Petitioners and "simply asserts an interest in seeing that [Respondents] follow the law—an interest shared by all citizens of the Commonwealth." Preliminary Objections of GVSD at 5. West Chester Area School District (WCASD) adds: "Other than the conclusory allegation that Petitioners have 'suffered direct, immediate, and substantial injury,' the Petition is devoid of any facts in support of this legal conclusion. . . . Nowhere does the Petition assert how the continuation of virtual learning, pursuant to the [Department's Policy], will cause the individual Petitioners any substantial, direct, and immediate harm or impact." Preliminary Objections of WCASD at 12-13.[15]

Petitioners responded in their various answers to Respondents' preliminary objections that their "interests surpass those of other citizens because

---

[15] Concerning Open PA Schools, WCASD states that an association "has standing only to the extent that one or more independent members is suffering immediate or threatened injury as a result of the action challenged." Preliminary Objections of WCASD at 13 (citing *Pa. Med. Soc'y v. Dep't of Pub. Welfare*, 39 A.3d 267, 278 (Pa. 2012)).

12

they are parents of children impacted by the [Policy] and who have been robbed of their entitlement to at least 180 days of in-person instruction" from Respondents. *See, e.g.*, Petitioners' Answer to the Preliminary Objections of DASD at 9-10. Petitioners' brief argues similarly that Petitioners "are not the same as ordinary citizens, they are parents of children who are directly and immediately impacted by the school districts['] refusal to afford public school children the benefit of 180 days of in person instruction." Petitioners' Brief in Support of Responses in Opposition to Respondents' Preliminary Objections at 10.

However, despite Petitioners' assertions in their subsequent responsive pleadings and brief, the determination as to standing must be made solely on their Petition and any relevant attachments or exhibits. *Scarnati v. Dep't of Env't Prot.*, 220 A.3d 723, 728 (Pa. Cmwlth. 2019). The Petition as drafted and filed by Petitioners lists the individual Petitioners as parents of students in the responding school districts and states that Open PA Schools "brings its claims as a representative on behalf of at least one of its members who has suffered direct, immediate, and substantial injury." Petition at 5. However, even assuming *arguendo* that Petitioners have been more directly impacted than ordinary citizens because they are parents of children in the responding school districts,[16] the Petition does not specifically assert, as it must, that any of the individually listed Petitioners sustained any harm; the only implication of actual harm is the Petition's assertion that although "[p]arents voted overwhelmingly in favor of either full [in-person] learning or a form of hybrid

---

[16] In opposition, Downingtown Area School District (DASD) asserts that Petitioners have "alleged no unique interest that is different than that of all the other parents of the millions of Pennsylvania school children" affected by the Department's decision to allow districts to provide largely or entirely remote learning at the outset of the 2020-21 school year. Preliminary Objections of DASD at 6.

learning,"[17] the responding school districts opened the 2020-21 school year conducting largely or entirely remote learning. *Id*. at 11-12. The individual Petitioners never actually asserted in the Petition itself that the districts' actions have caused them to be harmed or aggrieved. As to Petitioners' assertion that Open PA Schools represents members who have sustained "direct, immediate, and substantial injury," the Petition fails to specify any actual or even potential harm to the group or its members. *See William Penn Parking Garage*; *see also Pittsburgh Palisades Park; Pa. State Lodge; Pa. Chiropractic Fed'n*. Petitioners' assertions, therefore, either state no harm at all or are the kind of "general averments" found insufficient to achieve standing in *Pennsylvania State Lodge*.

Additionally, Petitioners have conflated the "harm" that is needed to have standing with the "harm" that must be demonstrated in order to obtain an

---

[17] In support of their position, Petitioners appended as exhibits copies of surveys asserted to be from the Methacton School District (which is not a party to this litigation) and Unionville-Chadds Ford School District. Exhibit A is an unattributed online survey released to 5,684 Methacton School District parents and guardians listed as primary student contacts; 1691 responses were recorded as of June 3, 2020, for a 29.7% response rate. The survey questioned the parents' satisfaction with remote learning from March through June of the 2019-20 school year and found that while 66% of responding parents were satisfied with remote learning (Question 2), if a return to in-person learning was found safe and permitted by the Commonwealth, 82% would allow their children to return to school and 70% would prefer in-person learning if given the choice for the 2020-21 school year (Questions 5 & 6).

Exhibit B is a series of undated, unattributed, and unexplained pie charts that Petitioners assert represent the "first choices" of parents and families in the Unionville-Chadds Ford School District. The charts include "brick and mortar" and remote options, but also undefined "UCFVA," "Scaffold," and "AB/CD/EF" options. In some instances, "brick and mortar" is the first choice, as for 42.5% of parents and families with high school students, over 12.48% of the same group selecting remote learning as the first choice; but the following pie chart, also purportedly representing the first choices concerning high school students, suggests figures of 22.16% selected remote learning over 13.32% selecting brick and mortar learning. Petitioners assert that "[o]ver 75% of the parents in the Unionville-Chadds Ford School District indicated they preferred some form of in-person school to start the year" but do not explain how Exhibit B supports this statement. Petition at 11 & n.6.

14

injunction, a lower standard in which mere violation of a law may be sufficient. In *Pennsylvania Public Utility Commission v. Israel*, 52 A.2d 317 (Pa. 1947), our Supreme Court adopted the opinion and order of the Dauphin County Court of Common Pleas[18] holding that for purposes of injunctive relief, a violation of a statute was, in itself, irreparable harm or injury. *See id*. at 321-22. *Israel* continues to be cited for the proposition that a continuing violation of a statute is all the harm that must be shown by the moving party seeking a preliminary injunction. *See, e.g.*, *Wolk v. Lower Merion Sch. Dist.*, 228 A.3d 595, 611 (Pa. Cmwlth. 2020) (citing *Israel* for premise that in injunction context, "[s]tatutory violations constitute irreparable harm *per se*, which relieved the trial court of undertaking the balance of the harm inquiry").

The availability of "*per se* harm" in the injunction setting appears to be asserted here by analogy in Petitioners' position that if this Court finds that the Department and the responding districts' actions in beginning the 2020-21 school year with largely or entirely remote teaching violate the School Code, then declaratory judgment in Petitioners' favor is warranted. *See* Petition. However, the standard of harm required to achieve standing requires a would-be plaintiff to show more: a direct, substantial, immediate interest and sufficient averment of facts showing the party is aggrieved. *William Penn Parking Garage*; *see also Pittsburgh Palisades Park*; *Pa. State Lodge*; *Pa. Chiropractic Fed'n*. The Petition, as drafted, fails to assert actual or even probable harm sufficient to meet the correct standard. Accordingly, Petitioners have not established standing to bring their cause of action. We therefore grant Respondents' Preliminary Objections for lack of standing,

---

[18] The Dauphin County Court, at that time, was known as the "Commonwealth Court" because it had been designated a Court of Common Pleas "of a special class" with statewide jurisdiction to hear all appeals from state agency decisions as well as original jurisdiction actions instituted by a state agency. *Israel*, 52 A.2d at 323-24.

dismiss Respondents' additional Preliminary Objections as moot, deny Petitioners' Application for Expedited Summary Relief, and dismiss the Petition without prejudice.[19]

We do not conclude as a matter of law that Petitioners are unable to allege sufficient facts to establish standing under this analysis. Therefore, our dismissal of the Petition is without prejudice. Petitioners may file an amended Petition within 30 days of the date of filing of this decision. *McConville v. City of Phila.*, 80 A.3d 836, 843-44 (Pa. Cmwlth. 2013).

_____
CHRISTINE FIZZANO CANNON, Judge

---

[19] In light of our dismissal of the Petition on grounds that it fails to plead sufficient harm or injury to establish Petitioners' standing, we do not reach Respondents' additional Preliminary Objections and present no opinion as to the sufficiency of the Petition in light of these additional objections (challenging the Petition for lack of a unique interest sufficient to establish standing, failure to exhaust administrative remedies, lack of subject matter jurisdiction, failure to join necessary and indispensable parties, and legal insufficiency).

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Open PA Schools, Jamie Walker,    :
Tara Adams, James Holt, Felix P.    :
Mummolo, Stacey McShane, Jaret    :
Matthew Gale, Patrice Silver, Joe    :
Dettore, Sr., Chris Brill, and Beth    :
Rosica,    :
            Petitioners    :
    :
          v.    :
    :
Department of Education of the    :
Commonwealth of Pennsylvania,    :
Pedro A. Rivera, Secretary of Education :
of the Commonwealth of Pennsylvania,  :
Central Bucks School District,    :
Downingtown Area School District,    :
Oley Valley School District,    :
Unionville-Chadds Ford School District, :
Perkiomen Valley School District,    :
Great Valley School District, and    :
West Chester School District,    :   No. 504 M.D. 2020
            Respondents    :

# O R D E R

AND NOW, this 14th day of January, 2021, Respondents' Preliminary Objections are sustained on the basis of Petitioners' failure to plead sufficient facts in their Petition for Review to establish standing. Respondents' remaining Preliminary Objections are dismissed as moot. Petitioners' Application for Expedited Summary Relief is denied. Petitioners' Petition for Review is dismissed

without prejudice.  Petitioners may file an amended Petition for Review within 30 days of the date of this order.


_____
CHRISTINE FIZZANO CANNON, Judge