474 A.2d 1120

**UPPER BUCKS COUNTY VOCATIONAL-TECHNICAL SCHOOL EDUCATION ASSOCIATION, et al., Appellees,**

v.

**UPPER BUCKS COUNTY VOCATIONAL-TECHNICAL SCHOOL JOINT COMMITTEE, et al., Appellants.**

Supreme Court of Pennsylvania.

Argued Jan. 23, 1984.

Decided April 30, 1984.

---

John J. Hart, Sellersville, for appellants.

John M. Demcisak, Willow Grove, for Palisades School Dist.

Anthony D. Newman, Thomas W. Scott, Harrisburg, for appellees.

## OPINION

ZAPPALA, Justice.

The question in this appeal is whether the Plaintiffs/Appellees have standing to maintain the underlying action for declaratory relief against the Defendants/Appellants.

The facts are not in dispute. The Upper Bucks County Area Vocational-Technical School is operated by a Joint Committee formed by the Quakertown, Pennridge, and Palisades School Districts for the purpose of providing a vocational-technical education program to the residents of the districts. For the most part, students enrolled in the Vo-Tech program attend one-half day of academic classes in their home districts and one-half day of instruction at the Vo-Tech facility.

The 1980–81 school year at the Vo-Tech school was scheduled to begin on September 2, 1980 and to end on June 9, 1981. Also scheduled were eight in-service days for teachers—two before, four during, and two after the students' school year. A strike by members of the Vo-Tech faculty

delayed the start of Vo-Tech instruction until September 24, 1980. The home school districts were open during this period, and students enrolled in the Vo-Tech program remained at their home schools during the half-days that they would otherwise have gone to the Vo-Tech facility. As a result of the strike, sixteen instruction days were lost from the Vo-Tech program. The Joint Committee, on October 16, 1980, approved a calendar for the school year identical to that which had been issued prior to the school year, thereby failing to make up the days lost because of the strike.

The present action was commenced in the Court of Common Pleas of Bucks County by individuals alleged to be teachers and taxpayers, and by the collective bargaining unit representing the teachers. The action sought a declaratory judgment declaring that the Joint Committee is required to operate the Vo-Tech school for 180 days in accordance with 24 Pa.C.S. § 15–1501, or in the alternative by virtue of regulations of the Department of Education and program plans submitted to the Department by the Committee. The action also requested an order directing the Committee to revise its 1980–81 schedule to include 180 days of instruction.

The Court of Common Pleas sitting *en banc* dismissed the action on the preliminary objections of the Joint Committee, holding that none of the plaintiffs had standing to bring the action. The Commonwealth Court 69 Pa.Cmwlth. 85, 450 A.2d 295 sitting *en banc* reversed, determining that the individual plaintiffs had standing as taxpayers to seek the desired relief. The Commonwealth Court did not address the question whether the individuals as teachers, or their union, had standing.

The essence of the standing requirement as articulated by this Court is that "[a] plaintiff ... must allege and prove an interest in the outcome of the suit which surpasses 'the common interest of all citizens in procuring obedience to the law' ... To surpass the common interest, the interest is required to be, at least, substantial, direct, and immediate." *Application of Biester,* 487 Pa. 438, 442–43, 409 A.2d 848,

851 (1979), *citing Wm. Penn Parking Garage v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975).

"The requirement that an interest be 'direct' simply means that the person claiming to be aggrieved must show causation of harm *to his interest* by the matter of which he complains." *Wm. Penn*, 464 Pa. at 195, 346 A.2d at 282 (emphasis added). The Appellees argue, and the Commonwealth Court held, that as taxpayers of the constituent school districts they have an interest which is harmed by the failure of the Committee to schedule 180 days, because the districts will lose a *pro rata* portion of a state subsidy for each day less than 180. We cannot agree. Nowhere in the complaint or in the record is there an allegation or evidence that links the loss of the subsidy with the plaintiffs' interest as taxpayers. The plaintiffs do not allege that the loss of the subsidy will in any way affect their status as taxpayers, for example, by causing a tax increase to offset the lost funding. Although "[c]ertain cases exist which grant standing to taxpayers where their interest arguably does not meet the requirements of *Wm. Penn*," *Application of Biester*, 487 Pa. at 444, 409 A.2d at 852, these cases are explained by the policy of ensuring judicial review which otherwise would not occur. "This will most often occur when those directly and immediately affected ... are beneficially affected as opposed to adversely affected." *Id.* 487 Pa. at 445, 409 A.2d at 852. We find that the Commonwealth Court erred in determining that this is such a case. A careful reading reveals that the exceptional cases referred to in *Biester* involve situations where there is *some* degree of causal connection between the action complained of and the injury alleged, although it is too small to ordinarily confer standing. We reiterate that in the present case, reading the record and drawing all inferences in light most favorable to the plaintiffs, there is *no* connection between the failure of the Committee to schedule 180 days and harm to the plaintiffs in their status as taxpayers.

The individual Appellees also argue as a basis for standing their status as teachers whose contract rights to com-

pensation and computation of retirement and other benefits are adversely affected by the failure of Appellants to schedule 180 days in compliance with either the statute or Department of Education regulations. The Appellee union argues standing derived from this standing of its members.

Within the requirement that the interest of the plaintiff be "immediate" in order to confer standing, is the concept that the "protection of the type of interest asserted is among the policies underlying the legal rule relied upon by the person claiming to be 'aggrieved'." *Wm. Penn,* 464 Pa. at 198, 346 A.2d at 284. The United States Supreme Court has phrased this guideline as whether "the interest the plaintiff seeks to protect is arguably within the zone of interests sought to be protected by the statute or constitutional guarantee in question." *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). We think it is clear that the sole purpose of the 180-day requirement contained in the statute and in the departmental regulations is to benefit the students of the Commonwealth. Any benefit to the teachers arising out of its operation or non-operation is purely incidental, and not within the zone of interests sought to be protected. Accordingly, the individual plaintiffs as teachers, and the union as their representative, do not have such an immediate interest as to confer standing to maintain the present action.

The order of the Commonwealth Court is reversed, and the order of the Court of Common Pleas of Bucks County is reinstated.

HUTCHINSON, J., filed a concurring opinion.

LARSEN, J., filed a dissenting opinion.

HUTCHINSON, Justice, concurring.

I join the majority in its holding that these appellants lack standing. I note, however, that they would have had a remedy for any wrong they suffered as employees from the calendar change by arbitration under the collective bargain-

ing agreement. *See Pa. Labor Relations Board v. Bald Eagle Area School District,* 499 Pa. 62, 451 A.2d 671 (1982).

LARSEN, Justice, dissenting.

I dissent.

The test for determining standing was recently set forth by this Court in *Franklin Township, et al. v. Commonwealth of Pennsylvania, et al.,* 500 Pa. 1, 452 A.2d 718 (1982), where, citing *William Penn Parking Garage v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975) we confirmed the principle that:

> "[T]o have standing, a party must (a) have a substantial interest in the subject matter of the litigation; (b) the interest must be direct; and (c) the interest must be immediate and not a remote consequence."

In *William Penn, supra,* we said:

> "The core concept, of course, is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution of his challenge. In particular, it is not sufficient for the person claiming to be 'aggrieved' to assert the common interest of all citizens in procuring obedience to the law."

> "It is the latter principle which lies behind the traditional formulation's requirement that the would-be 'aggrieved' party must have an interest which is 'pecuniary' and 'substantial'. Thus, for example, it is clear that some interests will suffice to confer standing even though they are neither pecuniary nor readily translatable into pecuniary terms."

In particular cases, the standing criteria of *Franklin Township* and *William Penn* are relaxed so that judicial review of questionable governmental activity may occur.

> "Certain cases exist which grant standing to taxpayers where their interest arguably does not meet the requirements of *William Penn* ... The relaxing of those requirements in those cases or, more appropriately, the granting of standing where the degree of causal connec-

tion between the action complained of and the injury alleged is small, can be explained by the policy behind granting taxpayers standing."

"As [then] Justice Roberts pointed out ... in *Faden v. Philadelphia Housing Authority*, 424 Pa. 273, 278, 227 A.2d 619, 621–22 (1967).

'[A]lthough many reasons have been advanced for granting standing to taxpayers, the fundamental reason for granting standing is simply that otherwise a large body of governmental activity would be unchallenged in the courts.' "

*Application of Biester*, 487 Pa. 438, 409 A.2d 848 (1979). I believe the appellees status as taxpayers is sufficient to grant them standing to challenge the legality of the school board's action in shortening the school year.

Section 1501 of the Public School Code (24 P.S. § 15–1501) provides:

"All public kindergartens, elementary and secondary schools shall be kept open each school year for at least one hundred eighty (180) days of instruction for pupils. No days on which the schools are closed shall be counted as days taught, and no time shall be counted as a pupil session for any activity to which admission is charged. No school district shall be required to change its graduation schedule or require graduating students to return to school after graduation to make up class days lost due to severe weather conditions.... No district which makes a bona fide effort as determined by the Secretary of Education to provide one hundred eighty (180) days of instruction for graduating students shall receive less subsidy payments or reimbursements than it would otherwise be entitled to receive on account of the school year because of the provisions of this section...."

Public School Code of 1949, Act of March 10, 1949, P.L. 30, as amended, 24 P.S. § 15–1501.

The provisions of Section 1501 have been construed to "prescribe as a matter of statewide policy, a *mandatory* minimum number of days on which schools 'shall be kept

open'." *Scanlon v. Mount Union Area Board,* 51 Pa. Cmwlth. 83, 415 A.2d 96 (1980).

Turning to the circumstances of this case, following the settlement of a teachers' strike, the appellant school board scheduled only 164 days of instruction for the 1980–81 school year—sixteen days less than the mandatory minimum prescribed by statute. At trial, there was uncontradicted testimony that the reduced schedule of instruction days would result in a reduction of the school year subsidy of approximately $30,000.00. Although there was no specific evidence that the reduction in the school subsidy would result in a direct pecuniary loss to the appellees in their capacity as taxpayers, I nevertheless would hold that appellees have standing to challenge the school board's action. The Department of Education chose not to bring an action against the school board for its failure to comply with the 180 day requirement. Additionally, there is slight chance that teenage students or their parents would hire a lawyer to challenge the elimination of sixteen days of instruction.

In cases such as this, public policy favors the granting of standing to taxpayers; otherwise, it is likely that the actions of the appellant school board would become part of that body of governmental activity that would go unchallenged in the courts.

I would affirm the order of the Commonwealth Court.