**Parents United For Better Schools Inc. v.
School District of Philadelphia Board of Education**

*Dennis M. Abrams,* for plaintiff.

*Glenna M. Hazeltine,* for defendant.

AVELLINO, *J.,* November 10, 1992—This litigation challenges a recent decision of the Philadelphia School Board that authorizes teachers and the like to give condoms to public high school students on a request and pilot basis (Policy 123).[1] The seven individual plaintiffs are the parent/guardians of children who attend public high schools.[2] Speaking broadly, they believe that Policy 123 gives the wrong "signal" to their (and perhaps, other) teenagers, namely, that engaging in premarital sex is acceptable behavior provided the participants don't contract a disease or become pregnant.[3] Insisting that the new

1. The new policy on adolescent sexuality is comprehensive in the sense that it contains numerous features. It was adopted by the board at its regular meeting on June 24, 1991, following nine public hearings at various locations throughout Philadelphia. The board began implementing the condom distribution feature on a pilot basis during January 1992. This lawsuit followed.

2. The remaining plaintiff, Parents United for Better Schools Inc., is a nonprofit, multistate organization that purports to have 20,000 or so members, an unspecified number of which have children who attend public high schools in Philadelphia. Because the legal standing of Parents United is *identical* to that of the parent-plaintiffs, see, e.g., *CEPA v. Phila. Water Dept. Commissioner,* 133 Pa. Commw. 148, 575 A.2d 161 (1990), *aff'd* 528 Pa. 600, 600 A.2d 189 (1992). I've omitted it from this discussion.

3. As the plaintiffs put it: "Apparently, it was not enough that [condoms] could be purchased in drug stores or obtained free of charge in clinics. They have to be available on demand for those students the board assumes would never heed the advice to practice abstinence. How can you stress abstinence as a lifestyle when you distribute condoms like candy at the same time?" Plaintiffs' brief at 3. See also, *Id.* at 4: "[This dispute] is about an affirmative action by the defendants to facilitate a [promiscuous] lifestyle. It's about [supplying] a device that is touted as making sex safer [that] will [only] encourage more sex, not safer sex...."

policy is at odds with state[4] and local[5] law, the parent-plaintiffs seek injunctive and/or declaratory relief.

Not surprisingly, the board argues that its condom-related activities are neither illegal nor imprudent.[6] More importantly, at least for the moment, the board has presented a motion for summary judgment contending that the parent-plaintiffs do not have standing to challenge the condom-distribution feature of Policy 123. This memorandum addresses that question.[7]

## I

The facts regarding standing are not disputed, and the most important fact, I think, is that Policy 123 contains an explicit provision that allows parents to opt their chil-

4. The plaintiffs contend, in substance, that state law determines what "health services" the board may or must supply for students, and that the state has never (explicitly) authorized the board to supply condoms. The validity of this argument, of course, depends, inter alia, upon whether or not distributing condoms is a "health service."

5. The plaintiffs argue, in substance, that the Philadelphia Home Rule Charter determines what powers the board may or must exercise, and that the charter does not (explicitly) empower the board to distribute condoms. Because the charter authorizes the board to supply "lawful" services to students, the validity of this argument also depends, inter alia, upon whether or not distributing condoms is a "health service."

6. For a decision that supports the board's stance, see, e.g., *Alfonso v. Fernandez*, 584 N.Y.S.2d 406 (1992) (upholding condom distribution in New York schools despite the absence of an opt-out or notification procedure for objecting parents).

7. On the need to address standing issues at the outset of a litigation, see, e.g., *Gulnak v. South Butler County School District*, 526 Pa. 485, 587 A.2d 699 (1991). (It is "error and a waste of judicial resources" for common pleas courts to address substantive legal questions if a plaintiff lacks standing to raise them.)

dren out of the condom distribution program.[8] In order to implement this feature, the principals of the high schools participating in the pilot program mailed letters to approximately 7,000 parents. Although the letters varied slightly from school to school, each contained the following instruction:

"Please fill out the enclosed form if you do not wish your child to be able to participate in [the condom distribution program]. Please mail it back to me within two weeks."[9]

In response to this instruction, 533 parents, including most of the plaintiffs, completed (and returned) opt-out forms.[10] Meanwhile, the board, sensibly I think, took the stance that those parent-plaintiffs who have not as yet completed an opt-out form do not, in fact, want their children to receive condoms. Withal, *none of the parent-plaintiffs' children are entitled to obtain condoms at school.*

Because so much ink has been spilled by courts[11] and commentators[12] discussing Pennsylvania's ubiquitous

---

8. "Parents or guardians of [high school] students ... shall have the absolute right to *veto* their child's or children's participation in the [condom distribution] program." (emphasis added)

9. The form referred to in the letter was preprinted and stated: "Dear Principal:

"I do not wish my child/children to be able to receive condoms in school.

"[signature]"

10. Judging from its discovery responses, the board received the indicated number of signed opt-out forms from parents with children at the following schools: Central (192), Edison (69), Martin Luther King (64), Bartram (44), Lamberton (41), West Philadelphia (41), University City (39), Gratz (36), Franklin (7).

11. For standing cases that involve schools, see, e.g., *Upper Bucks County Vocational-Technical School Joint Comm.,* 504 Pa. 418, 474 A.2d 1120 (1984) (teacher/taxpayers lack standing to challenge the

standing doctrine, I won't dwell on it here. Instead, I'll begin this discussion on common ground: Everyone connected with this case agrees that in order to establish standing, the plaintiffs must show that an "interest" belonging to them—as opposed to persons generally—has been or is likely to be infringed upon by the condom distribution feature of Policy 123, i.e., the governmental activity about which they complain. The only interest of this sort that the plaintiffs have ever mentioned is their right to raise their children as they see fit, (parental rights).[13] True, I am (hopelessly) sympathetic to any assertion of parental rights.[14] Nevertheless, those belonging to the plaintiffs have been vouchsafed by the fact that the board regards them as having opted their children

---

board's decision to shorten the school year); *Mifflin County School District v. Monsell,* 95 Pa. Commw. 173, 504 A.2d 1357 (1986) (father/coach does not have standing to challenge the board's decision to reduce the number of players on the football team).

12. See, e.g., comment, *Judicial Review of Administrative Action in Pennsylvania: An Updated Look at Reviewability and Standing,* 16 Duq.L.Rev. 201, 210-20 (1977); note, *William Penn Parking Garage v. City of Pittsburgh: Where Does It Leave the Concept of Standing in Pennsylvania?* 37 U. Pitt. L.Rev. 767 (1976). See also, C. Koch Jr., *Administrative Law & Practice,* §§10.2-10.10 (1985) (discussing state and federal notions of standing).

13. On parental rights, see, e.g., *Doe v. Irwin,* 615 F.2d 1162, 1167 (6th Cir. 1980), *cert. den.,* 449 U.S. 820. ("The Supreme Court has long recognized the right of parents to the care, custody and nurture of their children as a liberty interest protected by the 14th Amendment.") Parental rights, needless to say, are subject to numerous limitations including, of course, the right of children to their own privacy. See, e.g., *Carey v. Population Services Inst.,* 431 U.S. 678, 692 (1977) (the state may not prohibit the sale of condoms to minors); *accord, Doe,* 615 F.2d at 1166 ("As with adults, the minor's right to privacy includes the right to obtain contraceptives.").

14. Like the plaintiffs, I have a teenager at home.

out of the condom distribution program. As a result, the plaintiffs' interest in rearing their children—as opposed to their interest in the rearing of children generally—hasn't suffered any infringement that I know of from the condom distribution feature of Policy 123. Consequently, they lack standing in the traditional sense to maintain this action.[15]

## II

The plaintiffs are likewise not entitled to claim standing under the doctrine of exceptional circumstances. First announced in the cases of *Faden v. Philadelphia Housing Authority,* 424 Pa. 273, 227 A.2d 619 (1967), and *Application of Biestar,* 487 Pa. 438, 409 A.2d 848 (1979), this doctrine empowers common pleas courts to grant standing "when the degree of causal connection is small but judicial review is necessary to protect against governmental action which otherwise would go unchallenged."[16] Given that the board will not give condoms to the children of objecting parents (or to the children of consenting parents who never ask for them),[17] the plain-

15. See, e.g., *Sierra Club v. Hartman,* 529 Pa. 454, 605 A.2d 309 (1992) ("[F]or a party to maintain a challenge to [governmental action], his rights must have been invaded or infringed"); *accord, supra,* notes 7, 11 and 12 (collecting relevant cases and commentary). Cf. *Doe,* 615 F.2d at 1168 (conducting judicial review of a condom distribution program that did not contain an opt-out or notification feature for objecting parents, but holding: "[W]e can find no deprivation of the liberty interest of parents in the [agency's] practice of *not notifying them* of their children's voluntary decisions to [accept condoms].) (emphasis added); *Alfonso,* 584 N.Y.S.2d 406 (1992) (same).

16. *Sierra Club, supra.* (emphasis added)

17. It may be worth noting that this feature of the program is compatible with a teenager's right to privacy, *supra,* note 13, because

tiffs have suffered no harm from the governmental activity of which they complain. Stated differently, the plaintiffs are unable to show any infringement (as opposed to a "small" infringement) of their parental rights by the implementation of the condom distribution feature of Policy 123.[18]

For these reasons, the prothonotary is directed to enter the following

## ORDER

And now, November 10, 1992, the plaintiffs' complaint is dismissed for the reasons set forth in the accompanying memorandum.

---

it allows him/her to "trump" their parent's consent by simply *refusing* to ask for condoms that are, in fact, available.

18. On the philosophical differences between the plaintiffs and the board, see, e.g., *Mifflin County School District, supra:* "[Parents have] the right to disagree with the board's judgment, but [they] cannot resort to the courts for a remedy without asserting some injury resulting from the board's action." See also, *Munn v. Illinois,* 94 U.S. (4 Otto), 113, 134 (1876): "For protection against abuses [of a legislative nature] the people must resort to the polls, not to the courts."