940 A.2d 1227

Gene STILP, Appellant

v.

COMMONWEALTH of Pennsylvania, GENERAL ASSEMBLY, Jack Wagner, Auditor General of the Commonwealth of Pennsylvania, Department of Auditor General, Robert C. Jubelirer, David Brightbill, Robert Mellow, John M. Perzel, Sam Smith, H.W. Deweese, Leadership of the General Assembly, Noah Wenger, Legislative Audit Advisory Commission, and Robert P. Casey, Jr., Treasurer of the Commonwealth of Pennsylvania, Appellees.

Gene Stilp

v.

Commonwealth of Pennsylvania, General Assembly, Jack Wagner, Auditor General of the Commonwealth of Pennsylvania, Department of Auditor General, Robert C. Jubelirer, David Brightbill, Robert Mellow, John M. Perzel, Sam Smith, H.W. Deweese, Leadership of the General Assembly, Noah Wenger, Legislative Audit Advisory Commission, and Robert P. Casey, Jr., Treasurer of the Commonwealth of Pennsylvania.

Appeal of: Senators Jubelirer, Brightbill, and Wenger.

Supreme Court of Pennsylvania.

Submitted March 26, 2007.

Decided Dec. 27, 2007.

Linda J. Shorey, Kirkpatrick & Lockhart Preston Gates Ellis, LLP, George A. Bibikos, Harrisburg, for Senators Jubelirer, Brightbill and Wenger.

Gene Stilp, pro se.

Sally Ann Ulrich, PA Treasury Dept., for Robert P. Casey, Jr.

Thomas Walter Dymek, Philadelphia, PA, for General Assembly, et al.

Robert Forman Teplitz, Harrisburg, for Dept. of Auditor General and Jack Wagner.

CAPPY, C.J., CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN, FITZGERALD, JJ.

## *OPINION*

Justice CASTILLE.

The two issues presented in these cross-appeals are: (1) whether a taxpayer, Gene Stilp, has standing to seek, *inter alia,* a declaratory judgment that the Commonwealth's Auditor General has the authority and duty to audit the financial accounts of the General Assembly (the legislators' appeal); and (2) if the taxpayer does have standing to seek such relief, whether the Auditor General has the authority to audit the General Assembly's financial accounts (Stilp's appeal). The Commonwealth Court, sitting en banc, determined that Stilp had taxpayer standing to bring this action, but ultimately concluded that no constitutional or statutory authority existed to support a declaration that the Auditor General possesses the authority to audit the financial accounts of the General Assembly. For the following reasons, we find that the Commonwealth Court erred regarding the question of standing. This finding, in turn, makes it unnecessary to pass upon Stilp's

merits claim. Accordingly, we affirm the order below, but on standing grounds.

On October 11, 2005, Stilp, acting *pro se*, filed a petition for review in the Commonwealth Court seeking a declaratory judgment that the Auditor General has the authority to audit the General Assembly, and that the Legislative Audit Advisory Commission ("Commission")[1] was unconstitutionally created. Moreover, Stilp requested that the Court: (1) compel the Auditor General to audit the General Assembly; (2) compel the General Assembly's leadership and members of the Commission to cooperate with such an audit; (3) award him the costs of the lawsuit; and (4) grant him further equitable or declaratory relief as deemed necessary by the Court. Following the filing of preliminary objections by the governmental parties,[2] Stilp filed an amended petition for review on November 29, 2005.[3] The governmental parties responded by filing amended preliminary objections arguing, *inter alia*, that: Stilp lacks standing to bring this action; an attempt by the Auditor General to audit the General Assembly would violate the doctrine of separation of powers; and the yearly audit conducted by the auditing firm retained by the Commission satisfies the constitutional auditing requirement set forth in Article VIII, Section 10 of the Pennsylvania Constitution.[4]

1. The Commission is the body of the General Assembly created in 1970 to audit its financial accounts. 71 P.S. § 1189.2.

2. The governmental parties are split into three groups, with each group submitting separate pleadings throughout the course of this action. The first group is comprised of the General Assembly, the Commission, then-Speaker John M. Perzel, Senator Robert J. Mellow, Representative Samuel H. Smith, and Representative H. William DeWeese. The second group is comprised of Auditor General Jack Wagner and the Department of the Auditor General. Finally, the third group consists of now-former Senators Robert C. Jubelirer and David Brightbill, and Senator Noah Wenger.

3. Stilp's amended petition for review was essentially identical to the original petition, but did add the Commission as a party in this matter.

4. Article VIII, Section 10 was adopted in 1968 following the 1967–1968 Pennsylvania Constitutional Convention. The provision, entitled "Audit," provides in full:

    The financial affairs of any entity funded or financially aided by the Commonwealth, and all departments, boards, commissions, agencies,

The case was then submitted on the briefs without oral argument to the Commonwealth Court.

On April 24, 2006, the Commonwealth Court issued an en banc published opinion and order sustaining the collective preliminary objections and dismissing Stilp's petition. *Stilp v. Commonwealth,* 898 A.2d 36 (Pa.Cmwlth.2006). The Commonwealth Court initially determined that Stilp possessed the requirements for taxpayer standing to bring this action, citing *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 507 A.2d 323 (1986). The court ultimately concluded, however, that Stilp failed to provide either constitutional or statutory authority supporting the position that the Auditor General can, and must, audit the General Assembly. In addition, the court concluded that the separation of governmental powers doctrine prohibits such an audit.

In support of these conclusions, the Commonwealth Court relied heavily on an official opinion issued in 1966 by Edward Friedman, the Acting Attorney General of Pennsylvania at that time. Specifically, the opinion addressed a question posed to the Attorney General by the Auditor General at that time: whether the Department of the Auditor General had the authority to audit the appropriations for employees of all legislative departments. The Attorney General's opinion concluded that the Auditor General did not have that authority because there was no constitutional or statutory provision permitting such an audit. The opinion further concluded that such action by the Auditor General would violate the separation of powers doctrine:

A unilateral action such as an audit of any expenses of the offices of the General Assembly by the Auditor General would most certainly be an intrusion upon the prerogative of

instrumentalities, authorities and institutions of the Commonwealth, shall be subject to audits made in accordance with generally accepted auditing standards.

Any Commonwealth officer whose approval is necessary for any transaction relative to the financial affairs of the Commonwealth shall not be charged with the function of auditing that transaction after its occurrence.

PA. CONST. art. VIII, § 10.

a coordinate branch of the State Government and the violation of that fundamental doctrine inherent in our form of government.

Official Opinion No. 270, Opinions of the Attorney General, at 47 (July 15, 1966).

The Commonwealth Court correctly acknowledged that this opinion was forty years old and, more importantly, that it was issued before Article VIII, Section 10 of the Pennsylvania Constitution was adopted. The court noted, however, that the reasoning supporting the Attorney General's opinion is not contravened by Article VIII, Section 10 because the constitutional provision does not specify who is to conduct the audits of the financial affairs of the Commonwealth's departments and, notably, "does not give any inherent power to the Auditor General to audit the General Assembly." *Stilp*, 898 A.2d at 41. Relying on the legislative history of Article VIII, Section 10, the Commonwealth Court determined that the delegates of the Constitutional Convention consciously decided to leave open the details of what party could audit the financial accounts of the General Assembly. Therefore, according to the court, the General Assembly properly filled that void by enacting 71 P.S. §§ 1189.1–1189.2.

Section 1189.1, entitled "Audits of affairs of the General Assembly, legislative agencies," explicitly states that the Commission is entrusted with the sole authority over the process of auditing the General Assembly's finances. Specifically, the statutory provision reads as follows:

The financial affairs of the General Assembly and its legislative service agencies shall be audited by a certified public accountant to be retained by the Legislative Audit Advisory Commission. At least one such audit shall be made each year; however, special audits may be made when they appear necessary in the judgment of the Legislative Audit Advisory Commission.

71 P.S. § 1189.1. Section 1189.2, entitled "Legislative Audit Advisory Commission," establishes the Commission, how its

members are chosen, and its duties. The provision provides in full:

(a) There shall be an independent advisory commission, to be known as the Legislative Audit Advisory Commission, which shall consist of eight members, a majority and a minority member of the House of Representatives and two public members appointed by the Speaker of the House of Representatives, and a majority and a minority member of the Senate and two public members appointed by the President Pro Tempore of the Senate. The commission shall organize annually by electing from among themselves a chairman and a secretary.

(b) Except for the public members of the commission who shall receive a compensation of $100 for each day the commission shall meet, no other member of the commission shall receive any compensation but all members shall receive traveling and actual expenses incurred as members of the commission.

(c) The powers and duties of the commission shall be to:

(1) Examine the standards of audits performed under the provisions of section 10 of Article VIII, of the Constitution of Pennsylvania, and recommend measures for the improvement of pre-auditing and post-auditing of the financial affairs of the Commonwealth.

(2) Report annually recommendations and suggested legislation, if any, for the improvement of auditing in the Commonwealth, and particularly as it pertains to the Legislature.

71 P.S. § 1189.2.

Moreover, the Commonwealth Court acknowledged that Section 402 of the Fiscal Code charges the Auditor General with the responsibility of auditing the financial affairs of Commonwealth departments, with the exception of the Department of the Auditor General.[5] The court, however, again

5. Section 402 provides, in pertinent part:
   Except as may otherwise be provided by law it shall be the duty of the Department of the Auditor General to make all audits of transactions

relied on the Attorney General's official opinion of 1966, which concluded that Section 402 of the Fiscal Code did not empower the Auditor General to audit the accounts of the General Assembly, and thus dismissed the notion that Section 402 was controlling. The Commonwealth Court also emphasized that 71 P.S. §§ 1189.1–1189.2 grants sole authority over auditing the General Assembly to the Commission, in essence concluding that those statutory provisions trump the Fiscal Code.[6]

Judge Robert E. Simpson, Jr., authored a concurring and dissenting opinion. Judge Simpson agreed with the majority's conclusion that Stilp failed to set forth any legal basis for his position that the Auditor General can audit the General Assembly. The dissenting portion of Judge Simpson's responsive opinion, however, addressed Stilp's claim that a recent audit conducted by the accounting firm retained by the Commission was not performed in accordance with generally accepted auditing standards, as required by Article VIII, Section 10 of the Pennsylvania Constitution.[7] Noting that the posture

> after their occurrence, which may be necessary, in connection with the administration of the financial affairs of the government of this Commonwealth, with the exception of those of the Department of the Auditor General. It shall be the duty of the Governor to cause such audits to be made of the affairs of the Department of the Auditor General.
>
> At least one audit shall be made each year of the affairs of every department, board, and commission of the executive branch of the government, and all collections made by departments, boards, or commissions, and the accounts of every State institution, shall be audited quarterly.
>
> 72 P.S. § 402.

**6.** It is not entirely clear that 71 P.S. §§ 1189.1-1189.2 conflicts with Section 402 of the Fiscal Code, specifically because the Fiscal Code speaks only of auditing the executive branch, not the legislative branch.

**7.** It is unclear which fiscal year audit (2003 or 2004) Stilp contends was not conducted in accordance with generally accepted auditing standards. Both Stilp's pleadings and the Commonwealth Court opinion fail to definitively resolve this issue; however, the briefs filed by the governmental parties assert that the 2004 fiscal year audit is at issue. Stilp merely mentions that an article appearing in the Pittsburgh Tribune Review on August 24, 2005 reported that the accounting firm Ernst & Young had, at that time, just performed an audit of the General Assembly. It appears that the Commission has retained Ernst & Young every year since 1971 to be the accounting firm that audits the General Assembly's financial accounts.

of the case requires that all well-pled factual allegations and reasonably deduced inferences be accepted as true, Judge Simpson reluctantly surmised that the audit was not performed according to constitutional standards. Judge Simpson maintained, therefore, that Stilp stated a claim against the Commission and its representative member, Noah Wenger, and would allow the suit to continue against those parties only.

Following the Commonwealth Court's decision, Stilp filed this direct appeal challenging the lower court's merits determination of his claims. Former Senators Jubelirer and Brightbill and Senator Wenger (collectively, "the Senators") filed a cross-appeal, challenging the Commonwealth Court's preliminary determination that Stilp maintained taxpayer standing to bring this action. Both appeals were filed pursuant to 42 Pa.C.S. § 723(a) and Pa.R.A.P. 1101(a)(1).[8] On March 26, 2007, this Court ordered both appeals submitted on the briefs without oral argument. We will first address the Senators' standing claim because, if it is determined that Stilp does not have standing to seek the relief requested, we need not, and indeed cannot, address the merits of the substantive issues raised on Stilp's appeal.[9]

The Senators argue that the Commonwealth Court erred in resolving the preliminary question of whether Stilp had tax-

8. The Senators, of course, prevailed below. Stilp, however, does not argue that the Senators were not aggrieved by the decision on his standing, and thus he does not dispute the Senators' own standing to appeal. *See* Pa.R.A.P. 501 (any party aggrieved by an appealable order may appeal therefrom). In any event, the Senators' argument that Stilp lacked standing to initiate this lawsuit would be available to them in response to Stilp's appeal, as an alternative ground for affirming the Commonwealth Court's dismissal of Stilp's petition for review.

9. The applicable standard of review is well-settled:

An appellate court should affirm an order of a trial court (here, the Commonwealth Court) sustaining preliminary objections in the nature of a demurrer where, when all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts are accepted as true, the plaintiff is not entitled to relief. The court need not, however, accept any of the complaint's conclusions of law or argumentative allegations.

*Small v. Horn*, 554 Pa. 600, 722 A.2d 664, 668 (1998) (citation omitted).

payer standing to bring the instant action.[10] The Senators additionally fault the Commonwealth Court for reaching this determination in a footnote without any substantive analysis.[11] Thus, the Senators argue, the Commonwealth Court should not even have proceeded to the merits.

The Senators contend that in order for a party to avail itself of the taxpayer standing exception to traditional standing requirements, that party must initially allege an injury that he or she has suffered, and allege some causal connection between the action complained of and the alleged injury. Senators' Brief at 8 (citing *Application of Biester*, 487 Pa. 438, 409 A.2d 848, 851–52 (1979) and *Upper Bucks County Vocational–Technical Sch. Educ. Ass'n v. Upper Bucks County Vocation-*

10. In the court below, the other two groups comprising the governmental parties—*i.e.*, (1) the General Assembly, the Commission, former Speaker Perzel, Senator Mellow, Representative Smith, and Representative DeWeese; and (2) Auditor General Jack Wagner and the Department of the Auditor General—shared the Senators' position that Stilp lacks standing to bring this action. These two groups, however, did not join the cross-appeal.

11. The Commonwealth Court's analysis on the threshold taxpayer standing issue was not thorough or exacting as it did not apply the facts of this matter to the elements of the *Biester* test; rather, the court simply forwarded a conclusory determination of taxpayer standing after citing the required elements. The Commonwealth Court's entire discussion of this issue was the following:

> All of the Respondents have preliminarily objected on the basis that Stilp lacks standing to bring this action either because he has failed to allege an interest which is substantial, direct and immediate or because he has not shown that he has suffered any injury. While the issue is close, we find for purposes of this appeal that Stilp has standing under *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 507 A.2d 323 (1986), which requires him to demonstrate that 1) the governmental action would otherwise go unchallenged; 2) those directly and immediately affected by the governmental action are not inclined to challenge it; 3) judicial relief is appropriate; 4) there is no redress through other channels; and 5) no other persons are better suited to assert the claim. *See also In Re Milton Hershey*, 867 A.2d 674 (Pa.Cmwlth.), *petition for allowance of appeal granted*, 586 Pa. 717, 889 A.2d 1219 (2005) (taxpayer need not suffer any pecuniary harm to have standing to sue in state court; relaxed application of substantial-direct-immediate test in *William Penn*). Consequently, the preliminary objections on this issue raised by all of the Respondents are denied.

*Stilp*, 898 A.2d at 39 n. 7.

*al–Technical Sch. Joint Comm.*, 504 Pa. 418, 474 A.2d 1120, 1122 (1984) ("A careful reading reveals that the exceptional cases referred to in *Biester* involve situations where there is *some* degree of causal connection between the action complained of and the injury alleged, although it is too small to ordinarily confer standing.")). The Senators argue that Stilp has not forwarded any allegation of injury to himself, including any injury to his taxpayer funds. Moreover, the Senators assert that Stilp failed to allege any causal connection between the Auditor General's refusal to audit the General Assembly and any alleged injury he may have suffered. Finally, the Senators maintain that Stilp's conclusory allegation in his amended petition that he has taxpayer standing is actually a conclusion of law and not an allegation of facts.[12]

The Senators next argue that, even assuming Stilp satisfied the predicate requirements of cognizable injury and causal connection, he has not established the five factors necessary for taxpayer standing. Under *Biester*, a taxpayer has standing to challenge an act if: (1) the governmental action would otherwise go unchallenged; (2) those directly and immediately affected by the complained-of matter are beneficially affected and not inclined to challenge the action; (3) judicial relief is appropriate; (4) redress through other channels is unavailable; and (5) no other persons are better situated to assert the claim. *Pittsburgh Palisades Park, LLC v. Commonwealth*, 585 Pa. 196, 888 A.2d 655, 662 (2005) (citing *Consumer Party*, 507 A.2d at 329). The Senators contend that it is conceivable that another Auditor General could interpret his or her authority differently and bring a similar action in the future. They further contend that the General Assembly is not benefited by the fact that the Auditor General

---

**12.** Stilp's entire allegation concerning standing in his amended petition for review reads as follows:

> Petitioner, as a taxpayer, brings forth this action which will likewise benefit the citizens of the Commonwealth by challenging action by the Respondents that has and will otherwise go unchallenged and therefore, judicial relief is appropriate and redress through other channels is unavailable.

Stilp's Amended Petition for Review at 2 ¶ 5.

does not audit it as it is audited yearly pursuant to 71 P.S. §§ 1189.1–1189.2. Moreover, the Senators maintain that judicial relief is not appropriate because this case presents a non-justiciable question under the separation of powers doctrine, and that Stilp has other channels for seeking redress, namely, the election process. Finally, the Senators argue that the current Auditor General, or a future Auditor General, unquestionably is better situated to bring an action challenging how the General Assembly is audited.

In response, Stilp confines his arguments to the five-factor taxpayer standing test announced in *Biester*. Stilp contends that absent his challenge, the Auditor General's refusal to audit the General Assembly would go unchallenged. He additionally declares that the current Auditor General and the General Assembly benefit from the current system of auditing, but he does not explain that assertion. Stilp argues that judicial relief is appropriate because this is a case of first impression. Furthermore, he feels that redress through other channels is functionally unavailable because the Auditor General refuses to disrupt the current auditing process of the General Assembly, and the General Assembly permits only the accounting firm chosen by the Commission to audit its financial records, an arrangement Stilp feels is unconstitutional. Lastly, in a political rather than a legal argument, Stilp intemperately declares that he is best suited to bring this action because he has experience in filing lawsuits against the General Assembly, and because he "is one of few active reformers who have the best interest of the people in mind as he challenges the corrupt status quo." Stilp's Brief at 8.

■■ In seeking judicial resolution of a controversy, a party must establish as a threshold matter that he has standing to maintain the action. *Pittsburgh Palisades*, 888 A.2d at 659 (citing *Bergdoll v. Kane*, 557 Pa. 72, 731 A.2d 1261, 1268 (1999)). Taxpayer standing is an exception to the traditional standing requirements that was first recognized by this Court in *Biester*. Recently, this Court noted the following regarding taxpayer standing:

While *Biester* curtailed the concept of standing based solely upon taxpayer status, it also recognized that one who was not "aggrieved" so as to satisfy standing requirements might nevertheless be granted standing as a taxpayer if certain preconditions were met.

This exception's relaxation of the general rules regarding standing and their requirement of a substantial, direct, and immediate interest in the challenge, is policy driven. This policy, as expressed in *Biester*, revolves around the concept of giving standing to enable the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement. "Such litigation allows the courts, within the framework of traditional notions of 'standing,' to add to the controls over public officials inherent in the elective process the judicial scrutiny of the statutory and constitutional validity of their acts."

*Pittsburgh Palisades*, 888 A.2d at 661–62 (quoting *Biester*, 409 A.2d at 851 n. 5).

In applying the *Biester* exception, it is clear that Stilp has not satisfied the five requirements necessary for taxpayer standing. For purposes of decision, we need only focus on the fifth factor. Certainly, the Auditor General, an elected official, is a far-better situated party to bring an action seeking a declaratory judgment that the Department of the Auditor General does, or does not, have the authority to audit the financial accounts of the General Assembly. The fact that Stilp has a different view of the Auditor General's authority, or the role of the office, does not make him better situated than the official. Nor do Stilp's self-serving assertions of his own status, and his gratuitous denigration of elected officials, make him an appropriate party to litigate any question concerning the duties attendant upon an elective office. The discretion to bring such an action lies with the current Auditor General, or a future Auditor General, but no other party. The proper recourse available to Stilp, or other persons similarly situated, is to ask the Auditor General to seek to audit the General Assembly. Beyond that, Stilp's remedy, like that of all citizens, is at the ballot box.

Our decision today is consistent with two recent cases applying the *Biester* exception. In *Pittsburgh Palisades,* 888 A.2d 655, potential applicants for a slot machine license challenged the constitutionality of a provision of the Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. § 1101 *et seq.,* which required the Commonwealth to return license fees to license holders if certain delineated changes were made to the Gaming Control Board within five years after the issuance of licenses. This Court determined that the petitioners did not have taxpayer standing to challenge the constitutionality of the provision because they did not satisfy three of the *Biester* requirements, including the fifth factor. Concerning this factor, we determined that legislators who would be prevented from amending the statute would be better situated to raise a constitutional challenge. *Pittsburgh Palisades,* 888 A.2d at 662. Similarly, in the instant case, the Auditor General plainly is best situated to seek a declaratory judgment concerning his authority to audit the General Assembly's financial accounts.

In *Stilp v. Commonwealth,* 588 Pa. 539, 905 A.2d 918 (2006), we determined that the petitioner (the very same petitioner as in the case *sub judice* ) had taxpayer standing to challenge the constitutionality of legislation that created specific formulas which resulted in increased salaries for certain government officials. We found that no other persons were better situated to raise a constitutional challenge because all those directly and immediately affected by the statute—*i.e.,* the members of the General Assembly—were beneficially affected and, thus, not likely to bring a cause of action. *Id.* at 950–51. Again, here, as noted above, the Auditor General is clearly the more appropriate party to seek a declaratory judgment concerning whether he maintains the authority to audit the General Assembly.

For the foregoing reasons, we affirm the judgment of the Commonwealth Court, which dismissed Stilp's petition for review, but we do so on the ground that Stilp lacks taxpayer standing, which renders consideration of the merits unnecessary. Jurisdiction is relinquished.

Chief Justice CAPPY, Justice EAKIN, Justice BALDWIN and Justice FITZGERALD join the opinion.

Justice SAYLOR files a concurring opinion in which Justice BAER joins.

## CONCURRING OPINION

Justice SAYLOR.

While I agree with the majority that the current or future Auditor General is, or will be, in a better position to pursue the specific declaratory relief sought by Appellant in this case, *see* Majority Opinion, at 74–75, 940 A.2d at 1234, I nonetheless hold a broader view of citizen-taxpayer standing than that expressed by my colleagues. In this regard, the majority is correct that this Court's opinion in *Application of Biester,* 487 Pa. 438, 409 A.2d 848 (1979), has been interpreted as setting forth a five-part, conjunctive test for establishing whether taxpayer standing is permissible in a particular case. *See* Majority Opinion, at 71, 940 A.2d at 1233 (citing *Pittsburgh Palisades Park, LLC v. Commonwealth,* 585 Pa. 196, 207, 888 A.2d 655, 662 (2005); *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 170, 507 A.2d 323, 329 (1986)).[1] However, an examination of the *Biester* opinion reveals that it did not create the inflexible paradigm implied by later decisions. In this regard, the *Biester* Court simply noted that taxpayer suits have been permitted by the courts out of a concern that judicial review might otherwise be unavailable, and then observed that this "will most often occur when those directly and immediately affected by the complained of expenditures are beneficially affected as opposed to adversely affected." *See Biester,* 487 Pa. at 445, 409 A.2d at 852. Significantly, however, the Court did not state that this scenario constituted a factual prerequisite for instituting a taxpayer

---

1. This test provides that a taxpayer has standing to sue if: (1) the governmental action would otherwise go unchallenged; (2) those directly and immediately affected by the complained-of matter are beneficially affected and not inclined to challenge the action; (3) judicial relief is appropriate; (4) redress through other channels is unavailable; and (5) no other persons are better situated to assert the claim. *See* Majority Opinion, at 71, 940 A.2d at 1233.

suit. Similarly, the *Biester* Court merely indicated that, in examining whether taxpayer standing should be afforded in a given case, "[c]onsideration must be given to other factors such as, for example, the appropriateness of judicial relief, the availability of redress through other channels, or the existence of other persons better situated to assert the claim." *Id.*, 487 Pa. at 446, 409 A.2d at 852 (internal quotation marks, citations, and emphases omitted). Again, however, the Court did not imply that all of these factors must be present in a taxpayer suit. Indeed, it is only in subsequent cases that a conjunctive test has been construed from this language. *See, e.g., Pittsburgh Palisades,* 585 Pa. at 207, 888 A.2d at 662; *Consumer Party of Pennsylvania,* 510 Pa. at 170, 507 A.2d at 329. In my view, the earlier and less rigid standard announced in *Biester* presents a more appropriate means of effectuating the policy underlying the taxpayer exception to traditional standing requirements. *See Biester,* 487 Pa. at 445, 409 A.2d at 852; *Faden v. Philadelphia Housing Authority,* 424 Pa. 273, 278, 227 A.2d 619, 621–22 (1967) (stating that "the fundamental reason for granting [taxpayer] standing is simply that otherwise a large body of governmental activity would be unchallenged in the courts."). For instance, use of this model would permit citizen-taxpayer challenges in situations such as that presented by the present controversy, where, although a government official might be better positioned to challenge a particular governmental action, he or she is unwilling to do so.

That being said, however, I agree with the Commonwealth Court majority that, although Appellant may have standing to pursue his present action, he has not demonstrated that the Auditor General has either a constitutional or statutory obligation to conduct an audit of the General Assembly. *See Stilp v. Commonwealth,* 898 A.2d 36, 42 (Pa.Cmwlth.2006). In this regard, the Commonwealth Court majority has provided a well-reasoned and correct analysis of the issue. I therefore concur with my colleagues' decision to affirm the judgment of the Commonwealth Court.

Justice BAER joins this concurring opinion.